[Filed December 14, 1891.]

## IVER S. HAUGEN *v.* ALBINA LIGHT AND WATER COMPANY.

CORPORATION—EMINENT DOMAIN—FRANCHISE—MANDAMUS.—Where a private
corporation, organized for the purpose of carrying on a business public in
its nature, such as furnishing water to the inhabitants of a city, accepts
from the city a franchise and grant of the rights of eminent domain
without which the business could not be carried on, the performance of
the duty of furnishing water on reasonable terms to any inhabitant of the
city applying for it may be enforced by mandamus, although the grant of
the franchise may not in express terms require the corporation to furnish
water.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.   Affirmed.

This is an action for a writ of mandamus to require the
defendant to supply the plaintiff with water by tapping a

certain water-main on Tillamook street, and allowing him
to connect a service-pipe therewith, etc.   The facts alleged
in substance are these:   That the defendant is a corporation,
the business of which, among other things, is to furnish the
city of Albina, and the inhabitants thereof, with water; that
it is operating under a franchise granted to said company
by the council of the city of Albina, by virtue of an ordi-
nance, as follows:   "An ordinance granting the right of way
through the streets for laying pipes for the purpose of con-
veying water through the city.   The city of Albina does
ordain as follows:   Section 1.   That the Albina Water
Company, its successors and assigns, be and are hereby
granted the right and privilege of laying pipes through the
streets of the city of Albina, for the purpose of conducting
water through the city.   Section 2.   That the ditches for
laying pipes shall be sunk two feet, and the pipes for con-
ducting the water shall be under the surface or level of the
established grade eighteen to twenty inches on all improved
streets, and no pipe shall be laid so as to interfere with the
construction of sewers; *provided*, that nothing in this ordi-
nance shall be construed so as to grant any exclusive right
or privilege of conducting water into the city; *provided
further*, that said water company shall in no case charge
more than one dollar per month for the first faucet and
fifty cents for each additional faucet in the same building,
for family use or at a private dwelling house," etc.   That
the purpose and object of granting to said company the
right to lay water-mains in the streets of said city, was that
the citizens of said city might be furnished with a supply
of pure and wholesome water; that by virtue of the authority
conferred by said ordinance, the defendant laid down a
four-inch water-main in and through Tillamook street in
the then city of Albina, from the east line of the original
townsite of the city of Albina, to the west line of Twenty-
fourth street in Irvington, and connected the said main
with the main on Margaretta avenue in said city, and for
nearly a year past has been pumping water and conducting

it through said main on Tillamook street to supply the
citizens of Irvington residing east of Fourteenth street;
that the defendant utterly refuses to allow persons residing
on Tillamook street between the east line of the original
townsite of Albina and Fourteenth street in Irvington, to
tap said main, and refuses to supply them with water there-
from; that the plaintiff resided on Tillamook street between
the points above named, and is the owner of lot 2, block
126, of Irvington; that said lot abuts on said Tillamook
street, and the plaintiff is constructing a dwelling thereon,
and is desirous of securing a supply of water from the water-
mains of said street, that being the only source of water
supply for said premises; that the plaintiff has repeatedly
requested the defendant to supply him with water from
said main, but has always been refused; that on the eleventh
day of July the plaintiff tendered said defendant two dollars
and fifty cents, the regular fee charged by the defendant
for tapping a water-main with a service pipe, and demanded
from the defendant to be connected with said water-main
in Tillamook street, and to be supplied therefrom with
water, and that said defendant refused to accept said tender,
and refused to connect the plaintiff's premises with said
main, and refused to supply him with water therefrom;
that said refusal is willful, and is done for the avowed pur-
pose of debarring the residents on said Tillamook street,
between the original townsite of Albina and Fourteenth
street, and particularly the plaintiff, from the use of water
from said main; that the plaintiff is without any legal
remedy in the premises except the writ of mandamus, etc.

The defendant denies that under the authority conferred
by said ordinance. it laid down a four-inch or any water-
main, in or through Tillamook street, in said city as alleged,
or connected the said alleged main with the main on Mar-
garetta avenue in said city, or for nearly a year past, or for
any time, has been pumping water through said alleged
main; but the defendant alleges the fact to be that Ellis G.
Hughes and C. H. Prescott are owners of the tract of land

known as Irvington and John Irving's First Addition, east of Fourteenth street in Albina, and that in pursuance of an agreement entered into between the said Hughes and Prescott, for the purpose of supplying water to their property in Irvington and said John Irving's First Addition, the defendant laid down in said Tillamook street a supply pipe for said Hughes and Prescott, for which pipe the said Hughes and Prescott paid, for the sole purpose of supplying said lands with water; that said pipe is owned by said Hughes and Prescott, and is under their absolute control; that the defendant has no right to tap the same except with· the consent of Hughes and Prescott without paying the said Hughes and Prescott the sum of thirty-six hundred dollars, the cost of laying the same; that the business along the line will not justify the defendant in incurring the expense of purchasing said service-pipe and converting it into a main; that defendant has repeatedly applied to said Hughes and Prescott for leave to tap said service-pipe, without having to pay the price charged therefor, but they wholly refuse to give consent for the defendant to do so.   Denies that the defendant's refusal to tap said main, or refusal to supply the plaintiff with water, is willful or without lawful cause, or that the same is done with the avowed or any purpose of depriving the residents of Tillamook street or the plaintiff from the use of water from the alleged main, but alleges that the reason for not supplying the plaintiff with water from said service-pipe of said Hughes and Prescott is that it cannot do so without becoming liable to pay said Hughes and Prescott for said pipe the sum of thirty-six hundred dollars, which sum the defendant is not now prepared or able to pay, and for the further reason that the water which would be used along said street will not justify the expenditure, etc.

The plaintiff demurred to the new matter stated in the answer; and when the cause was heard, the court sustained the demurrer and gave judgment making the writ peremptory, from which this appeal is taken.

*Dolph, Bellinger, Mallory & Simon,* for Appellant.

*J. C. Moreland,* for Respondent.

LORD, J.—From this statement of the case, as presented by the pleadings, the court below held that when the defendant entered upon, and laid down its water-mains in the street, in pursuance of the privilege granted by the ordinance, it became bound to supply every abutter upon the street with water.

The contention for the defendant is, that the ordinance does not impose the duty upon it to furnish water, but only if it shall furnish water, that the charge therefor shall not exceed a certain sum therein specified; that the grant is to lay pipes through the streets, for the purpose of conducting water through the city in the mode prescribed, and so as not to interfere with the construction of sewers, but that it contains no provision requiring it to supply the city or its inhabitants with water, hence the ordinance imposes no duty upon the company to furnish water to any one.

In whatever form the argument is presented, it rests essentially upon this contention. While admitting that it is a corporation organized to supply the city and its inhabitants with water, and that the city by its ordinance granted it the right to lay water-mains through its streets for the purpose of carrying into effect the objects of its incorporation, it insists that the ordinance is the measure of the rights conferred and the obligation imposed, which, by its terms, only grants "the right and privilege of laying pipes through the streets of the city of Albina for the purpose of conducting water through the city," under the conditions imposed, without "a word in the language of the grant from which it could be inferred that the company is placed under any obligation whatever to supply any inhabitant of the city with water."

Counsel say: "If the ordinance had imposed upon the company the duty of supplying the inhabitants with water as a part of the conditions of the grant, such a conclusion

might be supported; but where no such duty is imposed, and nothing is said except that when the company furnishes water, it shall charge no more than a certain rate per month, they fail to see the soundness of the reasoning which makes it the duty of the company to furnish water."

It is thus seen that it is the absence of any express provision in the ordinance, imposing the duty upon the defendant to supply water, upon which the argument and the case for the defendant is predicated. The effect to be given to the fact that the defendant company was incorporated under the law to furnish water to the city and its inhabitants, and the implied obligation which the defendant assumed by accepting the grant or franchise under the ordinance, is entirely overlooked. The defendant is treated as a private corporation, the business of which is private and not of a public nature, and to meet a public necessity, and as a consequence, that it should not be subjected to duties or obligations that are not binding upon other private corporations. In support of this view, the only authority cited and relied upon by the defendant is *Paterson Gas Light Co.* v. *Brady,* 27 N. J. L. 245; 72 Am. Dec. 360.)

In that case the court was urged to assert the doctrine that gas companies, like common carriers and innkeepers, were bound to accommodate the public, but refused on the ground that the lack of precedents upon the subject could only be based upon the strong presumption that there was no principle of law upon which such a view could be supported. The court says: "The company may organize, may make and sell gas or not at their pleasure; and I see no more reason to hold that the duty of doing so is meant to be imperative than to hold that other companies incorporated to carry on manufactories, or to do any other business, are bound to serve the public any further than they find it to be their interest to do so. It was earnestly insisted on the argument that the community has a great interest in the use of gas, and that companies set up to furnish it ought to be treated like innkeepers and common

carriers, and that if no precedent can be found for such a decision, this court ought to make one. But that there is no authority for so holding in England or America, where companies have been so long incorporated for supplying water and gas to the inhabitants of numerous towns and cities, affords a strong presumption that there is no principle of law upon which it can be supported."

But this case and its reasoning was directly disapproved and overruled in the subsequent case of *Olmstead* v. *Proprietors of Morris Aqueduct*, 47 N. J. L. 333, in which the court says: "In that case,—*Paterson Gas Light Co.* v. *Brady*,—Mr. Justice ELMER declared that the company was under no legal obligation to supply gas to all persons having buildings on the line of their pipes, upon tender of reasonable compensation. He rested this view on the absence of any express provision in the charter imposing such duty upon the company. This decision fails, however, to give due effect to the purpose of the legislature, in creating the company and to the implied obligation assumed by the company in accepting the grant. If it were a grant for mere private uses empowering the corporate body to withhold service at pleasure from all persons, the company would be without the right to occupy the public streets for the laying of its pipes, and of course the grant of eminent domain for such private purposes would be void. In this respect, in my judgment, the conclusion in the Paterson case was erroneous, and in conflict with the views expressed in *Tide Water Co.* v. *Coster*, 3 C. E. Green, 518; 90 Am. Dec. 634, and in *Nat. Docks Ry. Co.* v. *Cent. R. Co.* 5 Stew. Eq. 755."

This view is certainly more in accord with recent decisions establishing the doctrine that it is mandatory upon corporations of this sort to supply one and all without distinction. The defendant by incorporating, under the statute for the purpose of supplying water to the city and its inhabitants, undertook a business which it could not have carried on without the grant of eminent domain over the streets in which to lay its pipes. It was by incor-

porating for this purpose, and in accepting the grant, it became invested with a franchise, belonging to the public and not enjoyed of common right, for the accomplishment of public objects and the promotion of the public convenience and comfort.   Its business was not of a private, but of a public nature, and designed under the conditions of the grant as well for the benefit of the public as the company.

"Such a business," says Mr. Justice HARLAN, "is not like that of an ordinary corporation engaged in the manufacture of articles that may be quite as indispensable to some persons as are gas lights.   The former articles may be supplied by individual effort, and with their supply the government has no such concern that it can grant an exclusive right to engage in their manufacture and sale, but as the distribution of gas in thickly populated districts is, for the reason stated in other cases, a matter of which the public may assume control, services rendered in supplying it for public and private use, constitute, in our opinion, such public services as, under the constitution of Kentucky, authorized the legislature to grant to the defendant the exclusive privileges in question." (*Louisville Gas Co.* v. *Citizens Gas Co.* 115 U. S. 683.)   And, in another case, the same eminent judge said:  " The manufacture of gas and its distribution for public and private use, by means of pipes laid down, under legislative authority, in the streets and ways of a city, is not an ordinary business in which every one may engage, but is a franchise belonging to the government to be granted for the accomplishment of public objects, to whomsoever, and upon what terms, it pleases. It is a business of a public nature, and meets a public necessity, for which the state may make provision." (*New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650.)

It must then be conceded that the defendant is engaged in a business of a public and not of a private nature, like that of ordinary corporations engaged in the manufacture of articles for sale, and that the right to dig up the streets, and place therein pipes or mains for the purpose of con-

ducting water for the supply of the city and its inhabitants, according to the express purpose of its incorporation, and the business in which it is engaged, is a franchise, the exercise of which could only be granted by the state, or the municipality acting under legislative authority.   In such case, how can the defendant, upon the tender of the proper compensation, refuse to supply water without distinction to one and all whose property abuts upon the street in which its pipes are laid?   The defendant company was organized to supply water to the city and its inhabitants, and the franchise granted by the city authorities was the means necessary to enable it to effect that purpose.   Without the franchise, the object for which the company was incorporated would fail and come to naught.   It could not carry on the business of supplying the city and its inhabitants with water without authority from the city to dig its streets and lay pipes therein for conducting or distributing water for public and private use.   It was not organized to lay pipes but to supply water, and the grant was to enable it to do so and thereby effect the public purpose contemplated.

When the defendant incorporated to carry on such a business, we may reasonably assume that it was with the expectation of receiving a franchise from the city, which, when conferred, it would undertake to carry on according to the purposes for which it was organized.   By its acceptance of the grant, under the terms of its incorporation, it assumed the obligation of supplying the city and its inhabitants with water along the line of its mains.   It could not dig up the streets and lay pipes therein for conducting water, except to furnish the city and its inhabitants with water.   That was the purpose for which it became a corporation, and the grant of the city was to enable it to carry it into effect.   And "if the supplying of a city or town with water," as VAN SYCKEL, J., said, "is not a public purpose, it is difficult to conceive of any enterprise entrusted to a private corporation that could be classed under that head."   (*Olmstead* v. *Morris Aqueduct, supra.*)

As the defendant could not carry on the business of supplying water without the franchise, the city must have intended, in granting such franchise, to charge it with the performance of the duty it undertook for the public by the terms of its incorporation, and the defendant, in accepting the benefits of the grant, must have assumed the performance of such duty. In a word, the acceptance of a franchise, under such conditions, carries with it the corresponding duty of supplying the public without discrimination with the particular commodity which the corporation was organized to supply. "It may be laid down as a general rule," says Mr. Morawetz, "that whenever the aid of the government is granted to a private company, in the form of a monopoly, or a donation of public property or funds, or a delegation of the power of eminent domain, the grant is subject to an implied condition that the company shall assume an obligation to fulfill the public purpose on account of which the grant was made. * * * The same rule applies to companies invested with special privileges at the expense of the public for the purpose of supplying cities with water." (2 Morawetz on Corp. § 1129.)

The books are replete with illustrations of this principle as applied to water companies, gas companies, telephone companies, and others in the performance of public duties. In *Lumbard* v. *Stearns*, 4 Cush. 61, it was held that if an aqueduct corporation, established for the purpose of supplying a village with pure water, should undertake capriciously and oppressively to enhance the value of certain estates by furnishing them with a supply of water and depreciate that of others by refusing it to them, such conduct would be a plain abuse of their franchise. SHAW, C. J., said: "We can perceive no ground on which to sustain the argument that this act does not declare a public use. The supply of a large number of inhabitants with pure water is a public purpose. But it is urged that there is no express provision therein requiring the corporation to supply all families and persons who should apply for water on reasonable terms;

that they may act capriciously and oppressively, and that by furnishing some houses and lots and refusing to supply others, they may thus give a value to some lots, and deny it to others.   This would be a plain abuse of their franchise. By accepting the act of incorporation, they undertake to do all the public duties required by it." This case is cited with approval in *Lowell* v. *Boston*, 111 Mass. 464; 15 Am. Rep. 39, and in *Olmstead* v. *Morris Aqueduct, supra*, in which *Paterson Gas Light Co.* v. *Brady*, 3 Dutch. 245; 72 Am. Dec. 360, is distinctly disapproved and overruled. In *Shepard* v. *Milwaukee Gas Light Co.* 6 Wis. 539; 70 Am. Dec. 479, the company had the exclusive right of supplying the city of Milwaukee with gas. The plaintiff, a merchant doing business on a street containing one of the defendant's mains, fitted up his establishment with the necessary pipes and fixtures for lighting the same with gas. He then applied to the gas company for a supply, tendering at the same time five dollars in advance payment therefor. He was required as a condition precedent to sign the printed rules and regulations of the company. He declined to do so. The company refused to waive the point, and suit was brought to recover damages suffered by the plaintiff because of such refusal. After discussing the question at great length, the court held that the company, upon compliance by the citizen with such reasonable terms as it may rightfully impose, was bound to furnish gas to the citizen who has made all necessary preparation to receive the same. But the court declares that the fact of an exclusive right to manufacture and sell gas in the city would imply an obligation on the part of the company to furnish the city and citizens with a reasonable supply upon reasonable terms; that when the nature and objects of the corporation are considered, namely, the exclusive right to manufacture and sell gas for the purpose of lighting the city and dwellings and business places of its inhabitants, how can it be urged that this is a mere private corporation for the manufacture and sale of a commercial commodity?

In *Williams* v. *M. G. Co.* 52 Mich. 499; 50 Am. R. 266, the

action was for damages for the failure of the defendant to furnish the plaintiff with gas, as plaintiff claimed was the defendant's duty. The court says: "The questions presented and argued before the judge of the superior court by counsel. for the defendant were, first, the plaintiff could not recover for the reason that the defendant was under no legal obligation or duty to supply any citizen of Detroit with gas. * * * The court below disagreed with the defendant's counsel upon this point. I agree with the judge of the superior court that it is the duty of the defendant, upon reasonable conditions, to supply the citizens of Detroit who have their residences and places of business east of the center of Woodward avenue with gas, wherever the defendant has connected its mains and service-pipes with the pipes and fixtures used at such residences and places of business and the owners or occupants shall desire the same. The defendant is a corporation in the enjoyment of certain rights and privileges under the statutes of the state and charter and by-laws of the city and derived therefrom. These rights and privileges were granted that the corresponding duties and benefits might inure to the citizens when the rights and privileges conferred should be exercised. The benefits are the compensation for the rights conferred and privileges granted, and are more in the nature of convenience than necessity, and the duty of this corporation imposed cannot, therefore, be likened to that of an innkeeper or common carrier, but more nearly approximates that of the telegraph-, telephone-, or mill-owner." (*Price* v. *Riverside, etc. Co.* 56 Cal. 431; *McCrary* v. *Beaudry*, 67 Cal. 120; *Lloyd* v. *Gas Light Co.* 1 Mackay, 331; *People* v. *Manhattan Gas Light Co.* 45 Barb. 136; *Gas L. Co.* v. *Colliday*, 25 Md. 1; *Gas L. Co.* v. *Paulding*, 12 Rob. 378.)

The same principle applies to telephone companies, which are regarded so far common carriers in their relation to the public that they must serve all members thereof alike in the transmission of messages. In *Cen. Tel. Co.* v. *State ex rel.* etc. 118. Ind. 206; 10 Am. St. Rep. 114, the court says: "While

it may not supply and take the place of the telegraph in many instances and for many purposes, yet in others it far surpasses it, and is and can be put to many uses for which the telegraph is unfitted and by persons wholly unable to operate and use the telegraph. It has been held universally by the courts considering its use and purpose, to be an instrument of commerce and a common carrier of news, the same as the telegraph, and by reason of being a common carrier, it is subject to proper obligations, and to conduct its business in a manner conducive to the public benefit, and to be controlled by law.   *   *   *   It is by reason of the fact that business men can have them in their offices and residences, and, without leaving their homes or their places of business, call up another at a great distance, with whom they have important business, and converse without loss of valuable time on the part of either, that the telephone is particularly valuable as an instrument of commerce. It being an instrument of commerce, and persons or corporations engaged in the general telephone business being common carriers of news, what are the rights of the public, independent of the statute, as regards discrimination? Any person or corporation engaged in the telephone business, operating telephone lines, furnishing telephonic connections, facilities and services to business houses, persons and companies, and discriminating against any person or company, can be compelled by mandate, on the petition of such person or company, discriminated against, to furnish to the petitioner a like service as furnished to others." (*State* v. *Neb. Tel. Co.* 17 Neb. 126; 52 Am. Rep. 404; *Com. U. Tel. Co.* v. *N. E. Tel. & T. Co.* 61 Vt. 241; 15 Am. St. Rep. 893; *State* v. *Bell Tel. Co.* 36 Ohio, 296; 38 Am. Rep. 583.)

A corporation, undertaking by its acceptance of a public franchise to perform a certain service, can be by mandamus compelled to perform that service. (*People* v. *N. Y. etc. R. R. Co.* 104 N.Y. 58; 58 Am. Rep. 484; *Vincent* v. *Chicago, etc. R. R. Co.* 49 Ill. 33; *Farm. L. & T. Co.* v. *Henning,* 17 Am. L. R. 266.)

The pipe which was laid by the defendant in Tillamook street was laid in pursuance of the franchise granted by the

city, as it had no authority to lay any other kind of pipe or main than prescribed by the ordinance, or for any other purpose than conducting water to supply the city and its inhabitants without discrimination, to all persons having buildings or lots on the lines of their pipes, upon tender of the proper compensation. There is no claim that Hughes and Prescott had any right to dig up the street or to lay such pipe. It could only be done by the defendant so far as disclosed by this record, under the grant, in the mode prescribed, and for the purposes already stated. It is true, it is alleged in effect that the pipe was laid along the street and in front of the property of the plaintiff for the exclusive benefit of Hughes and Prescott's property, and for the sole purpose of supplying their lands with water. The street in front of the plaintiff's property was subjected to this public use for the special benefit of aiding in the sale of their property. Their object was to induce purchasers to buy land from them for homes in place of others whose property along the street abutted on the main. To favor them, the defendant, by virtue of the franchise granted, laid the pipe, but refused to supply the plaintiff with water from it, upon the tender of the amount usually charged for such service. As Hughes and Prescott are not parties to this record, what rights or contractual relations they may bear to the defendant we neither know nor decide. We attach no significance to the words supply pipe used in the answer. The pipe was laid along the street and in front of the lot of the plaintiff under the franchise granted by the city, and by the terms of its incorporation, to supply water to the city and its inhabitants. This being a public purpose and the business of a public nature, the defendant must serve all alike, and for any discrimination, mandamus is the appropriate remedy.

We discover no error, and the judgment must be affirmed.