(November 9, 1909.)

ALBERT L. HATCH, Plaintiff, v. CONSUMERS COMPANY, LTD., a Corporation, Defendant.

[104 Pac. 670.]

WATER COMPANY—PUBLIC SERVICE CORPORATION—SUBJECT OF PUBLIC REGULATION—SERVICE CONNECTION SUPPLYING CONSUMER—REASONABLE RULES AND REGULATIONS—LAYING MAINS ON UNGRADED STREET—EXTENSION OF CITY BOUNDARY—IMPLIED CONTRACT OF CORPORATION—CONFISCATION OF PROPERTY.

1. Under the franchise granted by the city of Coeur d'Alene to the Consumers Company to occupy the streets and alleys of the city for the purpose of supplying the city and inhabitants thereof with fresh water, the right and authority to dig in the streets and alleys and lay pipes therein for supplying consumers with water is conferred upon the company alone, and no such right is conferred upon the individual or consumer, and the consumer acquires no right to lay pipes or acquire property in the streets and alleys, but, on the contrary, the duty to do so and the rights acquired thereby belong to the water company. It is consequently the duty of the water company to supply and lay the laterals from its main to the line of a consumer's property abutting on such street, and such laterals are the property of the water company. *Bothwell v. Consumers Co.,* 13 Ida. 568, 92 Pac. 533, and *Pocatello Water Co. v. Standley,* 7 Ida. 155, 61 Pac. 518, followed and approved.

2. Under the statute of this state, sec. 2839, Rev. Codes, and the general rule of law applicable in such cases, a water company may make and enforce such reasonable rules and regulations as are in

harmony with law and consonant with justice for the conduct of its business, the protection and preservation of its property, and the collection of its water rentals, and in so doing may require the consumer to pay reasonable water rentals in advance, or in default thereof shut off the water supply, or may require a month's rent to be paid at the end of the month, or in default thereof shut off the water until such time as the rent due is paid.

3. A water company cannot enforce a rule requiring a consumer to pay an old or disputed bill for water furnished him at some previous time, or some other and independent use, or at some other place or residence, or for a separate or distinct transaction from that for which he is claiming and demanding a water supply, as a condition precedent to supplying him with water, where he tenders payment of the established water rate in advance for the service he is demanding.

4. In such cases the parties are not upon equal grounds. The consumer's necessities for water for business, health, comfort, and life are such as to put him at a decided disadvantage and deprive him of the right to contest an unjust claim; and it would, therefore, be unjust, unsafe, and contrary to public policy to invest a public service corporation with power to become both judge and jury in the determination of claims and demands it holds against the consumer.

5. An ordinance of the city of Coeur d'Alene, passed and approved in the month of April, 1904, including the Krotzer addition to Coeur d'Alene City within the corporate limits thereof, was not void on account of an intervening strip of land 2,663 ft. in length by 2.8 ft. wide at one end, and 67 ft. wide at the other. Sec. 9 of the act of February 9, 1899, as appears at page 109 of the 1899 Sess. Laws, which was in force at the time of the adoption of the foregoing ordinance, provided that land or territory laid off or subdivided as provided by statute "shall be regarded and treated as contiguous to such city or town, notwithstanding any stream or embankment or any strip or parcel of land not more than 200 feet in width may be or lie between such land or territory and the corporate limits of such city or town."

6. In a case where the city authorities have by ordinance extended the city limits so as to include an addition or tract of land and the inhabitants thereof, and all parties affected thereby have acquiesced in the action of the city authorities and have transacted their business upon the theory that such territory was included within the city limits, a public service corporation will not be allowed to question the validity of such action of the city council in a collateral attack after the lapse of five years.

7. Under the terms of a franchise ordinance, wherein it is provided that the company receiving the franchise shall not be re-

quired to extend its water mains along any ungraded street or alley, no question as to the construction of such provision can arise in a case where the company has in fact extended its main along such ungraded street. After so doing the company cannot refuse to supply consumers along such street on the theory that it was not compelled to build along such street in the first place.

8. A corporation receiving a franchise from a municipality in this state authorizing it to supply the inhabitants with water, by accepting such franchise and attempting to operate thereunder, enters into an implied contract to serve all the inhabitants of such municipality without distinction or discrimination, upon such persons paying it the established rates and complying with the reasonable rules and regulations of such company.

9. To compel a public service corporation to live up to the law of its existence and to discharge the duties for which it was organized and for which it received its franchise, can in no case amount to a confiscation of its property, or taking its property without due process of law, even though such requirement necessitates the corporation using a part or all of its property or investing its money in order to meet its duties and obligations.

10. There can be no element of confiscation or taking property without due process of law in a case where a writ of mandate is issued to compel a water company to put in laterals and service connections from its main to the property line of an abutting owner at an expense of $8.50, where he tenders the monthly water rate of $1.50 in advance. In such case, the rental rate constitutes a fair and reasonable income and revenue on the sum invested, and compulsory service in such case contains no element of confiscation.

11. A public service corporation organized for the purpose of supplying the inhabitants of a municipality with water is not justified in assuming that the people it is to serve are dishonest, and that they will demand and pay for a month's water supply merely for the purpose of entailing upon the company the expense of putting in laterals and service connections, and that they will thereafter refuse to take water and thereby discommode themselves and depreciate their own property, and the courts will not base decisions upon such an assumption.

(Syllabus by the court.)

Original action praying for a writ of mandate. Writ *granted.*

Reed & Boughton, for Plaintiff.

Any attempt upon the part of the defendant to require plaintiff or any other consumer to enter into a contract such

as proposed by defendant, which would be a lien upon plaintiff's property for all time, would be unreasonable. (*Wheeler v. Northern Colo. Irr. Co.*, 10 Colo. 582, 3 Am. St. 603, 17 Pac. 487; *Rockland Water Co. v. Adams*, 84 Me. 472, 30 Am. St. 368, 24 Atl. 840; *State v. Butte City Water Co.*, 18 Mont. 199, 56 Am. St. 574, 44 Pac. 966, 32 L. R. A. 697.)

A regulation that in case a consumer is in default his supply will be cut off is reasonable and may be enforced. But such a regulation cannot be made the instrument by which the water company can become the judge in its own case, or shut off water to enforce payment of a disputed bill; nor by its means can payment be enforced which it is not the duty of the consumer to make. (1 Farnham on Waters, 877, and cases there cited.) The account is with the premises and not with the consumer, so that water cannot be refused to an applicant because he is in arrears for water furnished him elsewhere. (1 Farnham on Waters, p. 880; *Dayton v. Quigley*, 29 N. J. Eq. 77.)

There is also a line of authorities which hold that gas companies may refuse to supply gas when the consumer is in arrears for gas furnished; but these authorities all seem to be based upon a statute giving the gas company the right to refuse to furnish gas while any rates remain unpaid. But it is held that even where there is a statute on the subject, that the right does not exist where there is an honest dispute as to the amount due. (20 Cyc. 1161, and cases there cited.)

The consumer could not legally be required to pay for a portion of the company's system, and neither could the company legally require an unreasonable payment in advance in order to secure water for domestic purposes. (*Pocatello Water Co. v. Standley*, 7 Ida. 155, 61 Pac. 518; *Bothwell v. Consumers Co.*, 13 Ida. 568, 92 Pac. 533.)

Robert H. Elder, and Gray & Knight, for Defendant.

A water company may make and enforce all reasonable rules and regulations which shall insure to it a fair return on the money invested, and also providing for the proper security to it of the payment of the rates fixed and amounts charged, as well as for the safety and preservation and con-

servation of its several instrumentalities. (*Tacoma Hotel Co. v. Tacoma Light & Water Co.*, 3 Wash. 316, 28 Am. St. 35, 28 Pac. 516, 14 L. R. A. 669; *Shepard v. Gaslight Co.*, 6 Wis. 539, 70 Am. Dec. 479; *Harbison v. Knoxville Water Co.* (Tenn. Ch.), 53 S. W. 993; *Williams v. Mutual Gas Co.*, 52 Mich. 499, 50 Am. Rep. 266, 18 N. W. 236; *Miller v. Wilkes-Barre Gas Co.*, 206 Pa. 254, 55 Atl. 974; *Cedar Rapids Gaslight Co. v. City of Cedar Rapids* (Iowa), 120 N. W. 966; *Watauga Water Co. v. Wolf*, 99 Tenn. 429, 63 Am. St. 841, 41 S. W. 1060; *Poole v. Paris Mt. Water Co.*, 81 S. C. 438, 128 Am. St. 923, 62 S. E. 874; *People v. Manhattan Gaslight Co.*, 45 Barb. 136; *Girard Life Ins. Co. v. Philadelphia*, 88 Pa. 393; *City of Atlanta v. Burton*, 90 Ga. 486, 16 S. E. 214.)

The requirement of a quarter's rent in advance is not unreasonable. (*Harbison v. Knoxville Water Co., supra.*) A rule requiring a deposit of $20 has been held to be reasonable. (*Northern Colo. etc. Co. v. Richards*, 22 Colo. 450, 45 Pac. 423.) The right of a company to protect itself by requiring a deposit or other assurance that it will be paid for water furnished is well established. (*Cedar Rapids Gaslight Co. v. City of Cedar Rapids, supra; Williams v. Mutual Gas Co.*, 52 Mich. 499, 50 Am. Rep. 266, 18 N. W. 236.) A regulation requiring applicant to agree to pay a reasonable charge for connections is a reasonable and proper one, especially when the commission has fixed such charge and it appears that the commissioners in fixing the charge for such connections had due regard to the monthly rate and *vice versa*. (*Foley v. Hillyard Water Co.*, 49 Wash. 232, 94 Pac. 1080; *Public Service Co. v. American Co.*, 67 N. J. Eq. 122, 57 Atl. 482; *Prindiville v. Jackson*, 79 Ill. 337; *Jackson v. Mayor of Ellendale*, 4 N. D. 478, 61 N. W. 1030; *Palmer v. Danville*, 154 Ill. 156, 38 N. E. 1067.)

A company cannot be compelled to furnish taps free, without assurance of continued use. (*Public Service Co. v. American Co., supra; Foley v. Hillyard Water Co., supra; San Diego Water Co. v. San Diego*, 118 Cal. 556, 62 Am. St. 261, 50 Pac. 633, 38 L. R. A. 465.)

A private owner has a right to enter the street and make connections with main pipe, and it is his duty to do so at his

own charge under certain conditions. (Farnham on Waters and Water Rights, p. 752; *Gleason v. Waukesha Co.,* 103 Wis. 225, 79 N. W. 249.)

A corporation cannot be required to use its property for the benefit of the public without receiving just compensation for the services rendered by it. (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819; *San Diego Land & Town Co. v. National City,* 174 U. S. 739, 19 Sup. Ct. 804, 43 ·L. ed. 1154; *Trammell v. Dinsmore,* 102 Fed. 799; *San Diego Land & Town Co. v. Jasper,* 110 Fed. 714; *Jack v. Williams,* 113 Fed. 827; *Boise City Irr. & Land Co. v. Clark,* 131 Fed. 415, 422.)

The appropriation of private property to public use, no matter under what form of proceeding it is taken, amounts to a violation of the provisions of the federal constitution. (*Chicago B. & Q. R. Co. v. Chicago,* 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979.) When property is devoted to a use in which the public have an interest, the state may regulate the charges, but such charges must be reasonable. (*Cotting v. Godard,* 183 U. S. 79, 22 Sup. Ct. 30, 46 L. ed. 92; *Spring Valley Waterworks v. San Francisco,* 124 Fed. 585; *Budd v. New York,* 143 U. S. 517, 12 Sup. Ct. 468, 36 L. ed. 247; *San Diego Water Co. v. San Diego,* 118 Cal. 556, 62 Am. St. 261, 50 Pac. 633, 38 L. R. A. 467; *Danville v. Danville Water Co.,* 178 Ill. 299, 69 Am. St. 304, 53 N. E. 118; *Agua Pura Co. v. Los Vegas,* 10 N. M. 6, 60 Pac. 208, 50 L. R. A. 234; *Atlantic & Pac. R. Co. v. United States,* 76 Fed. 190.)

Legislation or decisions amounting to destruction of value of property amounts to a taking of property without due process of law. (*St. L. & S. F. R. Co. v. Gill,* 156 U. S. 649, 15 Sup. Ct. 484, 39 L. ed. 567; *Smyth v. Ames, supra; Capitol City Gaslight Co. v. Des Moines,* 72 Fed. 839; *San Joaquin etc. Co. v. Stanislaus Co.,* 90 Fed. 521; *Haverhill Gaslight Co. v. Barker,* 109 Fed. 694, 697; *New Memphis Gas & Lt. Co. v. Memphis,* 72 Fed. 955.)

AILSHIE, J.—This is an original action commenced in this court, praying for the issuance of a writ of mandate

against the defendant corporation, requiring and commanding that it connect plaintiff's water pipes with defendant's water system in the city of Coeur d'Alene.

The complaint alleges that the plaintiff is the owner of a lot or tract of land in Krotzer's addition to Coeur d'Alene City, and that he has built a dwelling-house thereon and has placed water-pipes therein, extending from his house to the curb line in Third street in front of his premises.

He alleges that the water rate for the service he requires and has demanded is $1.50 per month, payable in advance, as fixed by the water commissioners, appointed in conformity with the law for the establishing of water rates to be charged by the defendant company. He also alleges that he tendered the company, at its office, one month's water rent, and demanded that it make the connections and turn on the water for his use; "that the company thereupon refused and declined to do so unless he would also pay it the sum of $8.50 for making the tap in its water main, or deposit the sum of $15.00, the same to be refunded when the tap is taken out, less the actual cost of labor and cost of one corporation cock, or in lieu thereof that he should deposit $40 in cash, the same to be applied on payment of water to be used from said tap"; that the company now is and has been for more than five years last past operating in the village of Coeur d'Alene, under the terms of a franchise of the village embodied in ordinance No. 93 of said village, and that it is collecting monthly water rates in advance for water furnished to the inhabitants of the village; that the water rates have been established by a commission appointed in conformity with law, and which said commission established rates to be charged on the 14th day of October, 1907; and that the rate so established that applies to a service such as plaintiff demands is $1.50 per month; that the defendant company has a water main on Third street in front of plaintiff's property, and is furnishing other consumers along that street with water for which it is charging and receiving the sum of $1.50 per month in advance; that the company has an abundant supply of fresh water unsold and is able to supply the plaintiff with all the water he demands.

Plaintiff prays that a writ of mandate issue against the defendant requiring and compelling it to make the necessary connection with its water main and supply plaintiff with water upon receipt of the rental rates as established by the board. An alternative writ of mandate was issued against the defendant and it has answered, admitting plaintiff's demand, and that it has a water main upon Third street in front of plaintiff's house, and that it has refused to supply the plaintiff with water unless he accede to its requirements as set out in plaintiff's complaint.

Defendant has also pleaded further matter in defense of the action, in substance as follows: That prior to the construction by plaintiff of the house for which he now claims a water supply, plaintiff carried water from the faucet at the houses of some of defendant's water consumers, for which he became indebted to the defendant in the sum of $28, which sum the plaintiff has neglected, failed and refused to pay, and that the defendant refused to supply plaintiff with water in the future until such time as he paid the balance due for water previously supplied to him in the manner above mentioned.

It also alleges that plaintiff's property is not within the corporate limits of Coeur d'Alene City.

It further alleges that commissioners have heretofore been appointed in conformity with the law for the purpose of fixing rates to be charged by the defendant, and that in pursuance of the power and authority vested in them they met and fixed and established rates, and that the rate to be charged for service such as plaintiff demands is $1.50 per month in advance, and the further sum of $8.50 for making "water service connections"; and that the company has made and established a rule that where demand is made to have water supplied to a place that has not previously been receiving water, it requires that the applicant pay one month's rent in advance, and also the sum of $8.50 for tapping its main and making connections, or deposit the sum of $15.00, the same to be refunded when tap is taken out, less actual cost of labor and cost of one corporation cock, or a deposit of $40.00 cash, the same to apply on payment of water used.

Defendant alleges that the plaintiff declined and refused to comply with the rules and regulations of the company with reference to these several deposits, with the exception of the $1.50 monthly water rate, and that the defendant accordingly declined and refused to make the connection and furnish plaintiff with water.

It is also alleged that the commissioners took into consideration the payment of $8.50 for making tap and service connection in the fixing of monthly water rates.

On motion of the plaintiff, the court made an order striking from defendant's answer that portion thereof relating to the "rate to be charged for making service connections" as established by the commissioners, for the reason that under the provisions of our statute, sec. 2839, Rev. Codes, the commissioners had no authority to fix any rates except "the rates to be charged for water." They had no authority to fix rates or charges for the construction or alteration of any part of the defendant's pipes or water system, and had no authority to establish any rate for any labor or service or material or thing, other than for the use of water to be supplied by the corporation.

The court also sustained the plaintiff's motion to strike from the answer all the allegations with reference to the failure and neglect and refusal of the plaintiff to pay the sum of $28, balance due for water used by the plaintiff while residing at a different place and carried by him from a faucet at the residences of some of defendant's other consumers. The court thereupon ordered a reference to take testimony, and upon the coming in of the report and the submission of all the evidence on the part of both plaintiff and defendant, the case was argued by the respective counsel, and has been submitted for our final determination.

We have heretofore held in *Bothwell v. Consumers Co.*, 13 Ida. 568, 92 Pac. 533, and *Pocatello Water Co. v. Standley*, 7 Ida. 155, 61 Pac. 518, that the mains and laterals laid within the streets and alleys are the property of the water company, and that the franchise granted such company authorizes it to dig in the streets and alleys and use and occupy them for the purpose of laying and maintaining their pipe-

lines and delivering water to consumers. We discover no reason for departing from the rule announced in those cases. (See, also, sec. 2840, Rev. Codes.) On the other hand, the consumer has no right or franchise to excavate the streets or to lay or maintain pipes therein. When he undertakes to pass beyond his property line with pipes he is met by the public authorities and the franchise held by the water company. He is in no position to acquire a property right in the streets and alleys by laying pipes therein. The water company, on the contrary, is clothed with this power and right and all the necessary authority for creating and establishing property rights therein and the protection of such property. There is no reason in saying that the company has no interest in laterals it may lay in the streets from its main to the line of abutting property owners. These laterals are of just as much use and as valuable to the company as its mains in proportion to the amount of water to be delivered through such laterals as compared with that delivered through the main. The only difference whatever is in the extent of the service. The capacity of a main is ordinarily such that it will supply a large number of consumers along the street from the one main; the capacity of a lateral is ordinarily such that it will only supply one or two consumers. The relative value to the company of the main and laterals is measured by the extent of the service from the two. The necessity, however, for one is just as great as for the other. Without a main none of the residents along a street can be supplied. Without a lateral the individual consumer cannot be supplied. The law of ownership is the same in the one case as the other, and the right of property and control is the same in each instance. Water companies maintain waterworks for the purpose of collecting rates and tolls. They operate them for gain. In order to collect tolls they must deliver water. The consumer, on the other hand, pays his money for service. Unless he is served there is nothing for which he may be called upon to pay.

We are aware that some courts have held that the consumer may be required to pay the expenses of "service connections," as it is sometimes called, or rather for laterals

extending from the curb line to the main. So far as we have been able to examine, however, these decisions are based upon express statutes. There is a line of decisions to that effect in Wisconsin. The case of *Gleason v. Waukesha County*, 103 Wis. 225, 79 N. W. 249, is a leading authority on this point, and holds that the expense of laying water-pipes from the curb line to connect with the main may be properly assessed against the property of the abutting owner, but this is based upon the express provision of the Wisconsin statute authorizing the levying of assessments against abutting property owners for such purposes "whenever the council shall order the paving or repaving of any street in which water, gas mains and sewer or either of them shall have been previously laid or constructed." In that case it was claimed that the statute was unconstitutional in that it authorized a taking of property without due process of law. The court upheld the statute on the ground that the laying of the gas and water pipes was an improvement to the property of the abutting owners and that it conferred a benefit. We know of no case, however, that has held to such a rule in the absence of a statute or ordinance authorizing and providing for levying an assessment for such purposes.

Counsel for defendant seem to place great reliance on the case of *Foley v. Hillyard Water Co.*, 49 Wash. 232, 94 Pac. 1080, but an examination of that case discloses that it was decided on entirely different grounds. As we read and understand that case, the court denied Foley relief on the grounds of waiver and estoppel by reason of his previous action and conduct in the matter. The question involved in the case at bar does not seem to have been urged or considered in that case.

In *Haugen v. Albina Light & Water Co.*, 21 Or. 411, 28 Pac. 244, 14 L. R. A. 424, in considering the respective rights and duties of the water consumer and the water company with reference to laying pipes and acquiring property rights in the streets, Justice Lord, speaking for the Oregon supreme court, said:

"The pipe which was laid by the defendant in Tillamook street was laid under the franchise granted by the city, and

it had no authority to lay any other kind of pipe or main than prescribed by the ordinance, or for any other purpose than conducting water to supply the city and its inhabitants, without discrimination, to all persons having buildings or lots on the lines of their pipe, upon tender of the proper compensation. There is no claim that Hughes and Prescott had any right to dig up the street, and to lay such pipe. It could only be done by the defendant, so far as disclosed by this record, under the grant, in the mode prescribed, and for the purposes already stated.''

As to the right of a water company to refuse to supply the consumer until he pays overdue rents, there is not entire harmony among the authorities. Farnham on Waters and Water Rights, vol. 1, sec. 164a, contains the following résumé of various decisions of the courts on this subject:

''A very effective method of compelling the payment of water rates is the stopping of further supplies until arrears are paid. There is nothing to compel either a municipality or a water company to furnish water to one who will not pay for it, and a regulation that in case a consumer is in default his supply will be cut off is reasonable and may be enforced. But such a regulation cannot be made the instrument by which the water company can become the judge in its own case, and shut off water to enforce payment of disputed bills. Nor, by its means, can payment be enforced, which it is not the duty of the consumer to make. Nor can it be used as a means of collecting bills for independent matters not connected with the premises on which the water is desired.''

On one phase of the question the authorities seem to be, in entire harmony, and that is to the effect that a water company can make and enforce such reasonable rules and regulations as are in harmony with law and justice, for the conduct of its business and the collection of its water rentals. A regulation requiring a consumer to pay a month's rent in advance, or in default thereof the company will shut off the water, or requiring the consumer to pay at the end of the month the rates for the preceding month, or in default thereof the company will shut off the water, has generally been held

reasonable and within the power of such public service corporations. (*Tacoma Hotel Co. v. Tacoma Light & Water Co.*, 3 Wash. 316, 28 Pac. 516, 14 L. R. A. 669; *Shepard v. Milwaukee Gaslight Co.*, 6 Wis. 539, 70 Am. Dec. 479; *Harbison v. Knoxville Water Co.* (Tenn.), 53 S. W. 993; *Williams v. Mutual Gas Co.*, 52 Mich. 499, 50 Am. Rep. 266, 18 N. W. 236; *State v. Board of Water & Light Commrs.*, 105 Minn. 572, 127 Am. St. 581, 117 N. W. 827; *Cedar Rapids Gaslight Co. v. City of Cedar Rapids* (Iowa), 120 N. W. 966.) The rules of some companies seem to require one month's payment in advance, while others have required a quarter's payment in advance. It has been held, however, that a requirement that a consumer pay one year in advance was unreasonable. (*Rockland Water Co. v. Adams*, 84 Me. 472, 30 Am. St. 368, 24 Atl. 840.)

It has likewise been held that where the water has been shut off from a consumer on account of a default in payment of rentals when due, he cannot be charged the additional sum of $1 for turning the water off and on. (*American Waterworks Co. v. State*, 46 Neb. 194, 50 Am. St. 610, 64 N. W. 711, 30 L. R. A. 447.)

It seems to be quite generally held by the authorities that such a company may not refuse to supply the water to a consumer upon payments of rents in advance as required by the rules and regulations of the company, merely because he declines and refuses to pay a disputed bill or to pay past due water rents for some other and independent use, or at some other place or residence, or for a separate or distinct transaction from that for which he is claiming and demanding a water supply. (*Crumley v. Watauga Water Co.*, 99 Tenn. 420, 41 S. W. 1058; *Wood v. City of Auburn*, 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376; *American Waterworks Co. v. State*, 46 Neb. 194, 50 Am. St. 610, 64 N. W. 711, 30 L. R. A. 447.)

A public service corporation cannot safely be invested with a power and authority which will allow it to become both judge and jury in the determination of a disputed claim due it from a consumer. To do so would be dangerous and investing it with a power that invites extortion, and is too

liable to be abused. As was very aptly said by the supreme court of Maine in *Wood v. Auburn,* 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376:

"The parties are not upon equal ground. The city, as a water company, cannot do as it will with its water. It owes a duty to each consumer. The consumer, once taken on to the system, becomes dependent on that system for a prime necessity of business, comfort, health, and even life. He must have the pure water daily and hourly. To suddenly deprive him of this water, in order to force him to pay an old bill claimed to be unjust, puts him at an enormous disadvantage. He cannot wait for the water. He must surrender, and swallow his choking sense of injustice. Such a power in a water company or municipality places the consumer at its mercy. It can always claim that some old bill is unpaid. The receipt may have been lost, the collector may have embezzled the money; yet the consumer must pay it again, and perhaps still again. He cannot resist, lest he lose the water. . . . . To oblige a person to follow such a course would be a violation of the fundamental juristic principle of procedure. . . . . The water must be supplied to the complainant so long as he will promptly pay current instalments, and otherwise conform to the reasonable rules governing the supply of water. The respondent must now, in its turn, resort to judicial process, if it desires to enforce any further payment."

The foregoing conforms to our idea of justice and comports with the principles of fair dealing. Such companies receive a public franchise for the purpose of serving the people for reasonable compensation, but they have no right to use the privileges granted for the purpose of oppression, discrimination, or harassing or annoying the water consumer. Courts will not tolerate any such conduct for a moment. In the case at bar the bill the defendant was seeking to collect was for water alleged to have been used by plaintiff while residing at different places, and where he carried the water from the residences of other consumers, and the claim covers a period of over two years. This claim, if an obligation against plaintiff, was a wholly separate transaction, and must be collected

in the usual way in which debts are collectible. It cannot be wrung from the plaintiff by preying on his present rights and necessities for an essential to life and health.

It is argued by the defendant that plaintiff's property is not within the corporate limits of Coeur d'Alene City, and this contention grows out of the following conditions: In 1904 the city council passed an ordinance, known as ordinance No. 99, extending the city limits so as to include Krotzer's addition, in which plaintiff's property is located. It appears from the evidence in the case, however, that there is intervening between the original boundary line of Coeur d'Alene City and this addition a strip of land 2,663 feet in length by 2.8 feet wide at the westerly end and 67 feet wide at the easterly end. It also appears that this tract of land has never been included within the corporate limits of the city under any ordinance or resolution of the city council.

It is contended on behalf of the defendant that the action of the board in the passage of ordinance No. 99, incorporating the Krotzer addition within the city limits, is void for the reason, first, that the city clerk failed to file a copy of ordinance No. 99 with the county recorder in accordance with the provisions of sec. 2 of an act approved March 8, 1905, as appears at page 392 of the 1905 Session Laws, and which provision has been incorporated in sec. 2173, Rev. Codes. Whether or not this failure on the part of the clerk would defeat the purposes and objects of the ordinance is a question that we will not consider here, for the reason that this statute was not in force at the time of the passage and approval of ordinance No. 99. The ordinance was passed and approved in April, 1904, whereas the statute invoked was not approved until March 8, 1905.

It is next urged that under the provisions of sec. 2172, Rev. Codes, it is only competent for city or village authorities to incorporate within municipal boundaries the "land lying contiguous or adjacent" to the city, town, or village. It is contended that this addition was neither *contiguous nor adjacent* to the city of Coeur d'Alene, while the strip of land above described was intervening between the city boundary

and the addition laid out and platted. This contention is answered by the provisions of sec. 9 of the act of February 9, 1899, with reference to cities, towns, and villages, as appears on page 109 of the 1899 Session Laws. It provides, among other things, that land or territory laid off or subdivided as provided by statute "shall be regarded and treated as contiguous to such city or town, notwithstanding any stream or embankment or any strip or parcel of land not more than 200 feet in width may be or lie between such land or territory and the corporate limits of such city or town." Whether that provision of the statute be in force and effect now is immaterial. It is sufficient to say that it was in force and effect at the time of the passage and approval of ordinance No. 99 of the city of Coeur d'Alene, and completely answers the contention as to intervening territory between the original city limits and the Krotzer addition.

Over and above the foregoing answers given to defendant's contention, there is another reason why defendant's position is not tenable here. The ordinance extending the city limits so as to include plaintiff's premises was passed and approved in April, 1904, and the city authorities proceeded at once to exercise municipal jurisdiction over the territory, levied and collected taxes, exercised police jurisdiction over the new territory, and so far as appears in this action all parties acquiesced in the action of the city council, and proceeded to and did transact their business upon the theory and under the assumption that this addition was within the corporate limits of the city. This was not only true as to the plaintiff and Coeur d'Alene City, but it is true as to the defendant itself. It appears affirmatively from the record that the defendant operated its water plant on Third street running through this addition upon the theory that it was within the corporate limits, and charged consumers therein the regular rates established by the water commission.

This is a collateral attack, and the water company could not be permitted at this late date and in this manner to raise a question of so serious import involving the jurisdiction and authority of the municipality. *(Kuhn v. City of Port Town-*

*send,* 12 Wash. 605, 50 Am. St. 911, 41 Pac. 923, 29 L. R. A.
445; *Clement v. Everest,* 29 Mich. 19; *Mullikin v. City of
Bloomington,* 72 Ind. 161; *Frace v. City of Tacoma,* 16 Wash.
69, 47 Pac. 219; McQuillin on Munic. Ord., sec. 279; *Coler v.
Dwight School Tp.,* 3 N. D. 249, 55 N. W. 587 (589), 28 L.
R. A. 649.)

Defendant invokes the provisions of sec. 10 of ordinance
No. 93 granting it a franchise to operate within the corporate
limits of Coeur d'Alene City, and contends that under that
provision of the ordinance it cannot be compelled by *manda-
mus* to supply a water consumer on an ungraded street. That
provision of the ordinance is as follows:

"Said Consumers Company, its successors or assigns may
extend said distributing system of mains, pipes, laterals and
other facilities along any of the streets or alleys of said village,
whether such street or alley shall have been graded at the time
of such extension or not, but shall not be required to extend
the same along any ungraded street or alley."

It appears that Third street in front of plaintiff's premises
is an ungraded street, but whatever might be said with refer-
ence to the foregoing provision of the ordinance granting the
franchise, it is sufficient answer for the present case to say
that notwithstanding this provision of the ordinance the de-
fendant has laid its main along this street. It is already there,
and therefore needs no coercion for that purpose. It is con-
sequently liable to supply the inhabitants along the street who
tender the established water rates and demand service.

Finally, it is argued that to grant a writ of mandate in
this case would amount to a confiscation of defendant's prop-
erty and be in violation of the fourteenth amendment to the
federal constitution. This contention cannot be sustained.
The reasons are numerous against the position of defendant.
In the first place, the defendant is a creature of the laws of
this state created for a special purpose of a public character.
It is not permitted, like a private party, to charge whatever
it pleases or to serve those only whom it may choose to serve.
It must, on the contrary, serve the inhabitants of the munic-
ipality from which it receives a franchise for a reasonably

uniform compensation to be established in conformity with law (sec. 2839, Rev. Codes), and it must serve all persons without distinction or discrimination who pay the rate established and comply with the reasonable rules and regulations of the company. (Secs. 1, 2, art. 15, Const. of Idaho; secs. 2839, 2840, Rev. Codes; *Watauga Water Co. v. Wolfe*, 99 Tenn. 429, 63 Am. St. 841, 41 S. W. 1060; *American Water Co. v. State*, 46 Neb. 194, 50 Am. St. 610, 64 N. W. 711, 30 L. R. A. 447 (449); *Haugen v. Albina Light & Water Co.*, 21 Or. 411, 28 Pac. 244, 14 L. R. A. 424; *Mahoney v. American Land & Water Co.*, 2 Cal. App. 185, 83 Pac. 267; *Olmstead v. Proprietors*, 47 N. J. L. 311; *Rushville v. Rushville Natural Gas Co.*, 132 Ind. 575, 28 N. E. 853, 15 L. R. A. 321, and note.)

It was said by Chancellor Pitney in *Long Branch Commission v. Tintern Manor Water Co.*, 70 N. J. Eq. 71, 62 Atl. 474, in speaking for the court of chancery of New Jersey, that "A company which seeks and obtains a franchise to supply a certain territory with water for public and domestic uses is under a moral, and, in my judgment, a legal obligation to furnish a supply which shall be equal to all emergencies which may be reasonably anticipated, including unusual droughts and unusual conflagrations, and to bear constantly in mind the prospective increase in population and a consequent increased demand for water."

To compel the defendant to live up to the law of its existence can in no case amount to a confiscation of its property, and still in every instance wherein it is compelled by compulsory process to do any given act, the exercise of such judicial power necessarily involves either the use of the company's property or the expenditure of its money. To abide by the law and discharge its public duties, however, is a part of the contract it impliedly enters into with the state and municipality when it receives its charter and franchise and commences business. For the discharge of these duties and obligations it agrees to invest money and acquire property, and by that means serve the public indiscriminately for a reasonable compensation. When it neglects such duty it may

be coerced by judicial process. This is not confiscation or taking property without due process of law. It is a procedure almost daily invoked throughout the country against irrigation companies, gas and light companies, and railroad companies, as well as water companies. There is nothing new or novel about it. The company must either live up to the requirements of the law, or when that becomes too burdensome it may go out of business, but it cannot reap the benefits of its charter without assuming the duties thereof.

In this case the rates have been established, and the defendant makes no contention that the rates are too low or that it cannot make a fair income at the rates as established. It has never questioned these rates, and in fact from the evidence submitted in the record, it would seem that they are sufficient to net the defendant an exceptionally large return on the investment. Now, those rates were necessarily established on an estimate, among other things, of the total amount of investment and the number of consumers being served *at the time the rates were fixed by the board.* It is conceded that $8.50 will cover the total additional investment necessary to be made in order to serve the plaintiff, and thereby secure the additional revenue of $1.50 per month or $18 per annum. This does not sound like confiscation to us. An income of $18 per annum on an investment of $8.50 is certainly a splendid profit. But the water company replies that it has no assurance that the plaintiff will take water for more than one month. This argument leads to an inference that the water company wants someone to insure its perpetual income. While there can be no such thing as an absolute certainty that any one of its consumers will continue to use water for a whole year, or that they may not all quit using water at the end of the current month, yet it would be a violent and unjustifiable assumption to say that the plaintiff or any other consumer will only use water for one month. The defendant, like all individuals and corporations, must do business, in a measure, upon confidence and the assumption that the people with whom it is dealing are ordinarily honest (*Harbison v. Knoxville Water Co.* (Tenn.

Ch.), 53 S. W. 993; *Cedar Rapids Gaslight Co. v. Cedar Rapids* (Iowa), 120 N. W. 966), and that they are going to conduct their business in their own interests. It is scarcely likely that a man is going to build a dwelling-house on his lot and fit it up with water-pipes and pay for water for one month, in order to force a public service corporation to expend $8.50 in making the necessary connections, and then depreciate his own property and discommode himself or his tenant by having the water shut off and thereafter doing without. Such an assumption is not sufficient on which to transact business, and no individual or corporation would proceed upon such an assumption, and it is equally true that the courts are not going to render decisions on any such assumption. The common experience of mankind disproves such a theory. It is possible, and indeed probable, that an occasional instance will arise where, for want of a tenant or some other sufficient cause, a proprietor may not receive water from the company regularly every month, but such a case will be the exception, and will by no means constitute the rule. These exceptions will be no more frequent among the new consumers than among the old patrons of the company, and there can be no more excuse on this ground for refusing a new consumer water than there would be for refusing to supply one who has been previously receiving water. The supposition is that the rates received by the company are sufficient upon the whole to amply compensate the company for any such loss or diminution of rents as may arise from the exceptional instance where a consumer will cease to pay regular monthly water rates. This objection is entirely too imaginary, chimerical, and improbable to receive serious consideration from the hands of the court as a ground for denying an applicant a water supply upon the tender of the payment of the established rate.

It follows from what has been said that a peremptory writ of mandate must issue, commanding and requiring the defendant to make the necessary tap and connection with its water main, and to supply plaintiff with water upon receipt of the monthly water rate heretofore tendered by plaintiff.

The rule and regulation of the water company requiring the consumer to pay for the laterals and connections from its main to the street line of the consumer's property is unreasonable, and in conflict with the statute and charter and franchise under which the defendant is operating, and such regulation cannot be upheld by the court.

The writ will issue as prayed for by plaintiff, and the defendant will be required to make return to the clerk of this court within thirty days from date of filing this opinion, showing that it has complied with the order of the court, and it is ordered and decreed accordingly. Costs of this action will be taxed against the defendant.

Sullivan, C. J., and Stewart, J., concur.