EUGENE A. MERRILL

*vs.*

LIVERMORE FALLS LIGHT AND POWER COMPANY.

Androscoggin.    Opinion December 14, 1918.

*General rule of law covering the rights of public service corporations to cut off and refuse a supply of water or electricity.*

Action to recover damages sustained by the plaintiff through the acts of the defendant, a public service corporation, in severing its service wire connected with the plaintiff's blacksmith shop and refusing to supply him with electric current for light and power;

*Held:* That a public service corporation is not justified in refusing to supply a consumer merely because he refuses to pay for overdue service at some other place, or for a separate or distinct transaction from that for which he is demanding a supply.

Action on the case to recover damages which the plaintiff claims to have received by reason of defendant company cutting its wires which furnished light and power to the blacksmith shop of the plaintiff. Defendant filed plea of general issue. The case was heard before Justice of the Superior Court, Androscoggin County, without

jury.   Judgment was rendered for plaintiff in the sum of $150.00. To the findings of the presiding Justice exceptions were filed by defendant.   Judgment in accordance with opinion.

Case stated in opinion.

*George C. Wing, and George C. Wing, Jr.*, for plaintiff.

*Newell & Woodside*, for defendant.

SITTING:  CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

PHILBROOK, J.   This is an action to recover damages sustained by the plaintiff through the acts of the defendant, a public service corporation, in severing its service wire connected with plaintiff's blacksmith shop, and refusing to supply him with electric current for light and power.  The cause was heard by the Justice of the Superior Court in Androscoggin County, without jury, reserving the right of exception upon matters of law.   Judgment was rendered in behalf of the plaintiff and the Justice ruled as matter of law that the defendant's conduct was not justified.   The case is before us upon exceptions to that ruling.

From the record it appears that in May, 1916, the plaintiff bought this shop, situated on Church Street, in the village of Livermore Falls, and from that time until the time of hearing the cause he continuously occupied and used it.   When he bought the shop it was supplied with an electric meter, and connected with the light and power wires of the defendant company over which he was furnished electric current for lighting and power purposes.   In July, 1916, the plaintiff bought and moved into a dwelling house situated in the same village, but on a street other than the one on which the shop was situated.   The house was wired for electricity before the purchase but the meter had been removed.   After that purchase the meter was replaced in the house and current there furnished the plaintiff for lighting purposes.   At the expiration of a year of service in the house, a dispute arose regarding the refunding of the meter fee, whereupon the plaintiff refused to pay his house bill and directed the defendant to remove the meter from the house and to discontinue that service.   This was done September first, 1917.   At about the same time the defendant undertook to remove the shop meter, which plaintiff refused to allow, and the latter

continued to receive electricity at the shop until November 24, 1917, when the defendant severed the wire outside the shop. About two weeks before that date the plaintiff was notified that if he did not pay the amount due on the house, by the twenty-fourth his current would be shut off from the shop. He did not pay as demanded and the shop wire was severed, although there were no overdue charges for the shop service.

The defendant seeks to justify its conduct by virtue of a regulation, approved by the Public Utilities Commission, which provides that "Service to customers may be discontinued at any time by the company for non-payment of charges for current, with or without notice to the customer. No renewal of service shall be made to such customer until all arrears are paid in full, together with the charge of one dollar for renewal of the service." That such a regulation is reasonable is not in dispute, but the issue between the parties is whether a public service corporation may cut off one service, not in arrears, to enforce payment of arrears in another and independent service which is in arrears.

It should be observed that after the controversy over the house bill, and after the discontinuance of the house service, the defendant not only furnished current to the shop but accepted pay for the same, at least three payments being made and accepted for shop service after discontinuance of the house service, the dates of those payments being September 30, October 31, and November 3, all in the year 1917. In *Wood* v. *Auburn*, 87 Maine, 287, where a public service corporation furnishing water shut off the supply to the plaintiff, the court said: "The only trouble is over an old and disputed bill. The aqueduct company could have insisted on payment of this bill in advance, but did not. It could have shut off the water during the time covered by the bill, but did not. It preferred to let the bill and the dispute stand. Its successors, the city, with presumed knowledge of the facts, did not shut off the water. It accepted Mr. Wood's money for the next installment; furnished water for that six months to him as one within his rights and its rules; allowed him to suppose that the old bill in dispute would be ignored, or would be adjusted as are disputes between other parties. After having resumed these relations with Mr. Wood and taken his money therefor, the city now insists that he shall now be summarily deprived of an instant and

constant necessity in order to coerce him into a surrender of his position of defense against the old bill. Assuming that the rules of the old company and the city contemplate this course, we think they are unreasonable, and therefore without legal force." If this position obtains with reference to a particular service, and we here re-affirm the principle, how much more must it obtain where the supply is denied when the service is other than and separate from the service over which the controversy arose.

In *Turner* v. *Revere Water Co.*, 171 Mass., 329, the court said, "If gas is supplied to the owner of different houses under separate contracts, failure to pay the gas bill on one house does not authorize the cutting off of the gas from the other," citing *Gas Light Co.* v. *Colliday*, 25 Md., 1, and *Lloyd* v. *Washington Gas Light Co.*, 1 Mackey, 331.

In *Crumley* v. *Watauga Water Co.*, 99 Tenn., 420, 41 S. W., 1058, a patron of the defendant company became indebted thereto for water and piping and gave his due bill therefor. For a short time he voluntarily ceased to be a water taker, then decided to again take the water, but the company denied him the same unless he should pay all, or at least a portion, of the old bill. The court declined to uphold the contention of the company and awarded the plaintiff damages sustained by not being given the water supply. The language of the court, in part, is "The defendant in the present case cannot justify its declination to furnish water to the plaintiff by the fact of his failure to pay the whole or a part of his outstanding due bill, given for water and piping a year or two before. Upon the tender of the regular rates he was entitled to the water like other persons, and without reference to his past due obligation. The company had given him credit for the matters covered by the due bill, and could not thereafter coerce payment by denying him a present legal right," citing, among other authorities, *Wood* v. *Auburn*, supra, *Merrimac R. Savings Bank*, (Mass.) v. *City of Lowell*, 26 N. E., 97, and *American Waterworks Co.* v. *State*, (Nebraska), 64 N. W., 711.

In *Hatch* v. *Consumer's Company*, 17 Idaho, 204, 104 Pac., 670, it was held that a water company cannot refuse to furnish water to compel payment for water alleged to have been used by the applicant while residing at different places, where he tenders payment of the established water rates in advance for the service he is demanding.

Such a claim, the court declares, is a wholly separate transaction, and the obligation must be collected in the usual way in which other debts are collected.

The rights and duties of public service corporations have been perhaps more frequently the subject of litigation when water was the commodity to be furnished, but of course the principles governing public service corporations like the defendant in this case are the same as those governing other such corporations furnishing other services essential to the comfort, convenience and health of citizens in any community.

We might lengthen greatly the authorities in support of our conclusions for it seems to be quite generally held that a public service corporation may not refuse to supply a consumer merely because he refuses to pay for overdue service at some other place, or for a separate or distinct transaction from that for which he is demanding a supply.

*Exceptions overruled.*