715 P.2d 962

**COUNTY OF BANNOCK, a political subdivision under the laws of the State of Idaho, and S.R. Gameson in his capacity as Sheriff of Bannock County, Plaintiffs-Respondents,**

v.

**CITY OF POCATELLO, a municipal corporation under the laws of the State of Idaho, Defendant-Appellant.**

**No. 15685.**

Supreme Court of Idaho.

Feb. 19, 1986.

---

Nancy A. Ferris and J. Ivan Legler, Pocatello, for defendant-appellant.

John Marinus Bauman, Stephen G. Larsen and Shawn Anderson, Pocatello, for plaintiffs-respondents.

1985 Opinion No. 99, Issued May 30, 1985, is Hereby Withdrawn and This Opinion is Substituted Therefor.

## ON REHEARING

HUNTLEY, Justice.

By this appeal we are asked to decide the extent to which the City of Pocatello is liable to Bannock County for costs of incarcerating violators housed in the Bannock County Jail.

The action was initiated by Bannock County seeking judgment against the City of Pocatello for nonpayment of costs for housing persons detained in the Bannock County Jail for violations of any ordinances of the City of Pocatello, for violations of any offense arising under title 49 of the Idaho Code, and for violations of other misdemeanor criminal offenses arising under the statutes of the state of Idaho. The city denies it is obligated to pay for any of the aforementioned incarceration expenses other than those arising from detentions for violations of ordinances of the City of Pocatello.

The case was presented to the trial court on stipulated facts, the city moving for summary judgment and the county moving for declaratory judgment. The county's motion was granted, the city's motion was denied, and this appeal followed.

I.C. § 50–302A reads:

**50–302A. Confinement in city or county jail for violating ordinance.**—Any person charged with or convicted of violation of a city ordinance and subject to imprisonment shall be confined in the city jail; provided, however, that any city shall have the right to use the jail of the county for the confinement of such persons but it shall be liable to the county for the cost of keeping such prisoners.

Historically, under 50–302A (enacted in 1970), Bannock County was reimbursed by the city for the confinement of persons in jail for violations of city ordinances. The controversy between the parties arises from their conflicting interpretations of a related statute enacted three years later.

I.C. § 20–605 (1973), reads:

**20–605. Costs of confinement.**—The county wherein any court has entered an order pursuant to section 20–604, Idaho Code, shall pay all direct and indirect costs of the detention or confinement of the person to the governmental unit or agency owning or operating the jail or confinement facilities in which the person was confined or detained. The amount of such direct and indirect costs shall be determined on a per day per person basis by agreement between the county wherein the court entered the order and the county or governmental unit or agency owning or operating such jail or confinement facilities. In the absence of such agreement or order fixing the cost as provided in section 20–606, Idaho Code, the daily charge for each person confined or detained shall be the sum of twenty dollars ($20.00) per day, plus the actual cost of any medical or dental services, and in the event of the death of such detained or confined person, the county wherein the court entered the order shall pay all actual burial costs. *In case a person confined or detained was initially arrested by a city police officer for violation of the motor vehicle laws of this state or for violation of a city ordinance, the cost of such confinement or detention shall be a charge against such city by the county wherein the order of confinement was entered.* All payments under this section shall be acted upon for each calendar month by the second Monday of the month following the date of billing. (Emphasis added.)

The county asserts that the italicized portion of I.C. § 20–605, *supra,* plainly and

clearly requires that the city reimburse the county for the costs of confinement of all prisoners detained in the Bannock County Jail if the initial arrest was made by a city police officer for either violation of the motor vehicle laws or violation of a city ordinance, despite the fact that I.C. § 50–302A renders the city liable for a narrower sepctrum of cases.

To examine I.C. § 20–605 in a vacuum, as the county would have us do, would ignore two basic tenets of statutory construction. First, all section sof applicable statutes must be read together to determine the legislature's intent, *Umphrey v. Sprinkel,* 106 Idaho 700, 706, 682 P.2d 1247, 1253 (1983); *Magnuson v. Idaho State Tax Comm'n,* 97 Idaho 917, 920, 556 P.2d 1197, 1200 (1976). Secondly, in attempting to discern and implement the legislative intent, this Court will examine the statute's history and its evolution through amendment. *Leliefeld v. Johnson,* 104 Idaho 357, 367, 659 P.2d 111, 121 (1983); *Mix v. Gem Investors, Inc.,* 103 Idaho 355, 356–57, 647 P.2d 811, 812–13 (1982).

The current version of I.C. § 20–605 was added in 1973. At that time, former I.C. §§ 20–604, –605, –606 and –607 were repealed. *See* 1973 Idaho Sess.Laws, ch. 2, p. 4–6. Former I.C. § 20–604 provided, "When there is no jail in the county, or when the jail becomes unfit or unsafe for the confinement of prisoners, the probate judge may ... designate the jail of a *contiguous* county for the confinement of the prisoners of his county...." (Emphasis added.) Former I.C. § 20–605 directed the sheriff or keeper of the designated jail to receive all prisoners so committed to his jail. I.C. § 20–606 stated that prisoners should be returned to the original county once a jail was erected there or the original jail was rendered fit and safe, and I.C. § 20–607 set forth the procedural aspects of the prisoner's return. Thus, these former provisions, which were to be read together, provided for the use of the jail of a *contiguous* county when there was no habitable jail in the county.

Prior to the 1973 amendment of these statutes, it was "the duty of the board of county commissioners to furnish all persons committed to the county jail with necessary food, clothing and bedding, and the board of the county commissioners is authorized to pay therefor out of the county treasury under such rules and regulations as they may prescribe." I.C. § 20–612. That statutory duty has not changed to this day. The one exception to this duty was found in I.C. § 50–302A, enacted in 1970, which required the city to pay the county for the cost of confining any person charged with or convicted of violation of a city ordinance. I.C. § 50–302A did not require the city to pay for city ordinance violators who were confined in contiguous counties. There was no statutory provision that directly identified which county was to pay for the housing of prisoners confined to jails in *contiguous* counties.

The 1973 amendment of I.C. §§ 20–604, –605, –606 and –607 broadened the authority of the courts to send prisoners outside the county where they were charged by enabling a judge to order the confinement of prisoners in other non-contiguous counties. I.C. § 20–604, as amended, enables a district judge or magistrate to order prisoners confined in any county jail in that judicial district, or in any other county if an agreement to that effect exists between the counties. I.C. § 20–605, as amended, defines which county is responsible for the cost of jailing the prisoners in another county. Specifically, I.C. § 20–605 provides, "The *county* wherein any court has entered an order pursuant to section 20–604, Idaho Code, shall pay all direct and indirect costs of the detention or confinement of the person to the governmental unit or agency owning or operating the jail or confinement facilities in which the person was confined or detained." I.C. § 20–605 also sets the amount to be charged the responsible county, in the absence of an agreement or order fixing the costs pursuant to I.C. § 20–606. (I.C. § 20–606 allows for judicial determination of the costs of confinement.)

■ Finally, I.C. § 20–605 provides, "In case a person confined or detained was initially arrested by a city police officer for violation of the motor vehicle laws of this state or for violation of a city ordinance, the cost of such confinement or detention shall be a charge against such city by the county wherein the order of confinement was entered." Read with the other provisions of I.C. § 20–604, –605 and –606, all of which were enacted in 1973, it is clear that this language is very narrow. The statutory language only requires that the city reimburse the county when the county has a responsibility to pay for prisoners housed in other counties pursuant to I.C. §§ 20–604, –605 and –606.

That I.C. §§ 20–604, –605 and –606 only regulate the city's and the county's responsibility for prisoners housed in counties other than those in which the city is situated, becomes apparent when one considers that I.C. § 20–612 was not amended in 1973, but remains in effect today. As noted above, I.C. § 20–612 places on the county commissioners the complete duty to pay, with county funds, for all prisoners housed in *that county.* To interpret I.C. § 20–612 as the county does would require that we ignore I.C. § 20–612 presumably because I.C. § 20–605 has superseded I.C. § 20–612.[1] A statutory provision is not to be deprived of its potency if a reasonable alternative construction is possible, *State v. Rawson,* 100 Idaho 308, 312, 597 P.2d 31, 35 (1979); *Maguire v. Yanke,* 99 Idaho 829, 836, 590 P.2d 85, 92 (1979). A more reasonable alternative to the county's interpretation is that I.C. §§ 20–604, –605 and –606 are specific statutes which pertain only to the housing of prisoners in another county, while I.C. § 20–612 applies to prisoners housed within the county.

■ Accordingly, while I.C. § 50–302A does make the city liable to the county for the cost of jailing prisoners charged with or convicted of a city ordinance and I.C.

§ 20–605 places on the city liability for the cost of keeping prisoners in *other counties* if that offending person was either initially arrested by a city police officer for violation of a city ordinance or for violation of the state motor vehicle laws, nevertheless, under I.C. § 20–612, the City of Pocatello is not liable for the cost of keeping prisoners in the Bannock County Jail if the prisoner has been arrested by a city police officer for violation of a state motor vehicle law. Pursuant to I.C. § 20–612, the county has "the duty" to pay for the incarceration of such prisoners.

Reversed and remanded for further proceedings consistent herewith.

Costs to appellant. No attorney fees awarded.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

I dissent. Not because of any view of the correct policy to be implemented but solely because, in my view, the legislative enactments require a result contrary to the majority.

DONALDSON, Chief Justice, dissenting.

I dissent from the conclusion of the majority in this case with respect to the plain meaning of I.C. § 20–605 and the duty it places on a city whose officers arrest violators of state motor vehicle laws. One does not have to read that statute "in a vacuum" to conclude that the majority's extremely narrow interpretation of the city's duty to pay the costs of confining such violators could not have been intended by the legislature when I.C. § 20–605 was passed in 1973.

Indeed, I agree that I.C. § 20–605 must be read in the context of other statutory provisions governing the allocation of the costs of enforcing state and local laws. Of critical importance to this analysis, however, is I.C. § 19–4705, which the majority

1. Since I.C. § 20–612 requires the county to pay for *all* necessary food, clothing and bedding, whereas I.C. § 20–605 limits the county's liability to $20 per day where prisoners are confined outside the county, it is clear that the statutes are not in conflict, but merely apply to different situations.

completely ignores. It was enacted in 1969 and amended in 1971, just two years prior to the enactment of I.C. § 20–605. Subsection (c) of I.C. § 19–4705 directly addresses the allocation of money to the cities when their officers make the initial arrest of violators of state motor vehicle laws. I.C. § 19–4705(c) reads:

"**19–4705. Payment of fines and forfeitures—Satisfaction of judgment—Disposition—Apportionment.**

" . . . .

"(c) Fines and forfeitures remitted for violation of state motor vehicle laws, for violation of state driving privilege laws, and for violation of state laws prohibiting driving while under the influence of alcohol, drugs or any other intoxicating substances, shall be apportioned ten per cent (10%) to the state treasurer for deposit in the state general account, forty-five percent (45%) to the state treasurer for deposit in the highway distribution account, twenty-two and one-half per cent (22½%) to the district court fund and twenty-two and one-half per cent (22½%) to the state treasurer for deposit in the public school income fund; provided, however, that fines and forfeitures remitted for violation of state motor vehicle laws, for violation of state driving privilege laws, and for violation of state laws prohibiting driving while under the influence of alcohol, drugs or any other intoxicating substances, where an arrest is made or a citation is issued by a city law enforcement official, shall be apportioned ten per cent (10%) to the state treasurer for deposit in the state general account and ninety per cent (90%) to the city whose officer made the arrest or issued the citation.

By this enactment, the legislature expressly acknowledged the role that the cities play in the enforcement of state motor vehicle laws. Having turned over a substantial portion of the revenue from fines raised through city enforcement of state motor vehicle laws, the legislature took the next logical step and required the cities to pay the costs of confining those same violators who were generating this revenue. Thus, when the changes in I.C. § 20–605 were enacted in 1973, the legislature is assumed to have acted with full knowledge of the 90% allocation scheme it had set up just two years before. Since the city's role in motor vehicle law enforcement is specifically acknowledged in both provisions, they must be read together in order to ascertain legislative intent.

This intent confirms the reading of I.C. § 20–605 based on its plain and ordinary language. As this Court noted in *John Hancock Mutual Life Ins. Co. v. Haworth*, 68 Idaho 185, 191 P.2d 359 (1948), "[t]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." *Id.* at 192, 191 P.2d at 366; *Union Pacific Railroad Co. v. State Tax Commission*, 105 Idaho 471, 475, 670 P.2d 878, 882 (1983). I am concerned that although my colleagues in the majority obviously exhibit an acute and powerful intellect, they have interpreted I.C. § 20–605 in a curious and unnecessarily narrow manner.

I would agree with the opinion of the Attorney General of Idaho, who said,

"The City should, logically, be responsible for jail costs of enforcing its ordinances. Aside from the lack of interest counties have in the enforcement of city ordinances, the logic of the statute's cost provisions is enhanced when read beside the statutes pertaining to revenue generated by fines and forfeitures: cities receive 90 percent of the fines and forfeitures remitted for violation of city ordinances. Idaho Code Section 19–4705. Cities also receive 90 percent of fines and forfeitures resulting from their enforcement of state motor vehicle laws, therefor [sic], they bear the cost of imprisoning such offenders in the county jail.[3] Idaho Code Section 20–605. While the sheriff, for reasons discussed below, cannot refuse to accept city prisoners for failure of the city to pay for its prison-

ers, the county would be justified in taking legal measures to recoup its charges, should the city refuse to pay for its prisoners as required by law.

"Inasmuch as cities provide police officers who assume responsibility similar to the sheriff's in enforcing the state's penal laws within that area of the county which lies within city limits, the legislature has apparently deemed it fair to apportion to the city 90 percent of any fines and forfeitures arising out of state criminal violations where an arrest is made by a city police officer. Idaho Code Section 19–4705." Idaho Attorney General Opinion No. 84–4, at 44.

The Attorney General went on to explain in footnote 3 that,

"While Idaho Code Section 20–605 by itself might give the impression that cities are responsible only to counties other than the one in which they are located for costs of prisoners they have charged with motor vehicle violations, such a conclusion is illogical and unwarranted when Idaho Code Section 20–605 is read in the context of companion statutes. For instance, Idaho Code Section 19–604 [sic] allows a judge to commit an offender to '*any* county or municipal jail or other confinement facility within the judicial district in which the court is located,' [emphasis supplied in the Opinion], and the city will be liable therefor for the cost of its prisoners." *Id.* at 44 n. 3.

Although opinions of the Attorney General are not binding on this Court, they should, nevertheless, be accorded considerable weight, particularly where they concern the construction of statutes. *Goodin v. Board of Ed. of Independent School Dist. No. 14,* 601 P.2d 88, 91 (Okl.1979); *Moore v. Panish,* 32 Cal.3d 535, 543, 652 P.2d 32, 37, 186 Cal.Rptr. 475, 480 (1982).

The state has given the cities a considerable amount of money to help enforce state motor vehicle laws. Jailing violators is inherently a part of the enforcement of those laws. Therefore, it seems eminently logical to me, as it no doubt did to the 41st and

42nd legislatures, that the cities should pay the county in which violators arrested by city officers were ordered jailed. The city suggests it would be "manifestly unfair" to ask city residents to pay the jail costs which arise incident to the arrest of state motor vehicle law violators by city officers. Yet, this argument rings most hollow in light of the fact that each time a fine is paid by a violator arrested by a city officer, the state has allowed the city to retain 90%. If there is any unfairness in this case, it is in the curiously narrow meaning of § 20–605 inferred by the majority of the Court today which would have the county bear the full cost of jailing these violators unless they are fortuitously sent to another county's jail.

It should be noted that the statute speaks in terms of paying the *county,* not the jail facility directly. The city's duty under the statute is to reimburse the county where the court entered its order. Once fulfilled, it becomes the county's task to pay the prisoner's bill, whether that be in its own facility or that of another county. There is no provision making the city's duty to pay contingent on where the court may send the prisoner.

There are many factors that enter a district court's determination of where to send a prisoner. The fact that he was arrested by a city officer is irrelevant to that determination. Hence, it seems ironic that such a determination should, in turn, prove to be the critical event in preserving or relieving the city of its duty to pay. The city's responsibility to pay is determined by three specifically enumerated factors: (1) who arrests the prisoner; (2) for what charge he was arrested; and (3) in what county the court issues its order. I disagree with the majority that a fourth factor should be implied into this duty to pay, *i.e.,* where the court happens to send the prisoner to be housed.

As a result of today's opinion, district judges may tend to send violators of state motor vehicle laws to jails outside the county where they sit, regardless of available space in the county's own facility. Keep-

ing these violators in what will often be the most logical and convenient jail will be discouraged because the city, which was originally responsible for bringing them to justice, will not otherwise be forced to pick up the tab. This is an absurdly circuitous and administratively wasteful way to operate our local judicial system. The law was changed in 1971 and 1973 to make judicial administration by cities and counties more efficient, *not* more complicated. The extremely narrow reading of I.C. § 20–605 by the majority is unwarranted and will no doubt force the legislature to address this question once again. In the meantime, an allocation of costs inconsistent with the intent of I.C. §§ 20–605 and 19–4705 will be needlessly perpetuated in the cities and counties of Idaho.