777 P.2d 1208

**CITY OF GRANGEVILLE,
Plaintiff–Respondent,**

v.

**Garold HASKIN, Defendant–Appellant.**

**No. 17675.**

Supreme Court of Idaho.

July 27, 1989.

William B. Taylor, Jr., Grangeville, for defendant-appellant.

Dennis L. Albers, Grangeville, for plaintiff-respondent.

JOHNSON, Justice.

This is a collection case brought by the City of Grangeville against the owner of property in the city. The city sued to recover charges for water, sewer and garbage services provided by the city to tenants of the owner. The sole issue presented is whether the city may impose liability on the owner for these charges. The district judge affirmed a decision of a magistrate, who had awarded judgment to the city after conducting a trial de novo on appeal from a small claims judgment in favor of the city. We hold that the city had no statutory authorization to impose a lien on the property of the owner for these charges or to collect the charges from the owner. We reverse and remand.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

This action was commenced in the small claims department of the magistrate division. The city was granted a judgment of $73.51 against the owner. In the appeal by the owner to a magistrate, the city and the owner stipulated to the facts to be considered in a trial de novo. No other evidence was presented, and the parties stipulated that the question before the magistrate was one entirely at law. The following were the stipulated facts:

1. The owner and his wife are the record owners of real property (the property) within the city. The property is the subject of the water, sewer and sanitation billings that are the basis of this action.

2. At the time of the billings in issue and for some months prior thereto tenants of the owner were in possession of the property.

3. Each tenant opened up his own water, sewer and sanitation account with the city, individually and in his own name.

4. A total of $73.51 in delinquent water, sewer and garbage bills accumulated under the accounts of the tenants while they were in possession of the property. The owner did not personally use any of the services provided to his tenants for which the outstanding bills remain.

5. The city was unsuccessful in collecting the delinquent bills from the tenants and, therefore, sought to require the owner to pay the delinquent bills pursuant to section 3–3–6 of the ordinances of the city, which provided in part:

Notwithstanding the fact that the customer might be a tenant and might receive the water, sewer or garbage bill, the owner and occupant of any premises using the water, sewer or garbage system, shall be jointly and severally liable for all fees and charges assessed by the city. Any owner of real property renting the same to others, who shall desire to have notification of the monthly charges, shall make written application to the City Clerk for such duplicate billing, and shall be charged, in addition to the water, sewer or garbage services, the actual costs of such duplicate billing.

This section was part of an ordinance adopted on July 10, 1987.

6. No contract, either oral or written existed between the owner and the city providing for the owner to pay the bills incurred by the tenants.

7. The city has also adopted ordinances that are codified as sections 3–3–3 and 3–3–4. Section 3–3–3, which was adopted by the city on June 4, 1984, provided in part:

All charges for connections and for sewerage service ..., together with penalties and interest thereon, shall be a lien upon the property with which such connection is made or sewerage service rendered respectively, superior to all other liens and encumbrances whatsoever except for general taxes and local special assessments.

Section 3–3–4, which was adopted on August 9, 1979, provided in part:

Independent of any other enforcement remedy for water connection or water service, the City is hereby declared to have a lien upon the property with which such water connection is made or water service rendered respectively, superior to all other liens and encumbrances whatsoever, except for general taxes and local special assessments.

8. The city did not file any liens against the property on account of the delinquent amounts owed by the tenants for water, sewer and garbage charges.

The owner conceded that if there were statutory authority for a lien against the property in this case, the city had the power to adopt an ordinance imposing personal liability on the owner. The magistrate interpreted I.C. § 50–1813 to authorize liens for assessments applicable to city domestic water systems and awarded the city the full amounts claimed against the owner for delinquent water, sewer and garbage bills.

On appeal of the judgment awarded by the magistrate, the district judge interpreted I.C. §§ 50–323 and 50–1030(f) to imply the power for the city "to prescribe such methods of collection as the imposition of a lien on property or direct personal liability of the property owner." I.C. § 50–323 gives cities the power "to establish, create, develop, maintain and operate domestic water systems." I.C. § 50–1030(f) is part of the Revenue Bond Act and includes the power for cities "[t]o prescribe and collect rates, fees, tolls, or charges ... for the

services, facilities and commodities furnished by [water systems and sewerage systems], ... and to provide methods of collections and penalties, including denial of service for nonpayment of such rates, fees, tolls or charges." The district judge also concluded that based on I.C. § 50–1813 "all assessments levied under Idaho Code Sections 50–323 and 50–1030 shall be a first and prior lien upon the property assessed."

The owner has appealed the decision of the district judge affirming the judgment in favor of the city awarded by the magistrate.

## II.

### I.C. § 50–1813 DOES NOT AUTHORIZE CITIES TO IMPOSE LIENS FOR DELINQUENT CHARGES FOR WATER, SEWER AND GARBAGE SERVICES.

■ The district judge upheld the city's contention that I.C. § 50–1813 permits cities to impose a lien upon the property of the owner based on delinquent charges for water, sewer and garbage services furnished to the tenants. We disagree.

The premise of the city's position is that when the provisions now contained in I.C. § 50–1813 was reenacted as part of the recodification of the laws relating to municipal corporations in 1967, the reference to the application of this section to "[a]ll assessments levied under *this act*," (emphasis added) included reference to the provisions that became I.C. §§ 50–323 and 50–1030(f). This is a faulty premise.

What is now I.C. § 50–1813 was originally enacted in 1939 as part of a bill providing for cities and villages to acquire and establish municipal irrigation systems. 1939 Idaho Sess.Laws, ch. 248, § 7, pp. 599, 604. When it was enacted in this form, it was clear that the reference to "this Act" referred only to the municipal irrigation act. When the municipal corporation code was recodified in 1967, all of the laws relating to municipal corporations, including the municipal irrigation system act, were included in 474 separate sections in one bill. 1967 Idaho Sess.Laws, ch. 429, p. 1249–

1415. Section 368 of this bill was what is now I.C. § 50–1813. It stated:

> SECTION 368. All assessments levied under this act shall be a first and prior lien, subject only to state and county taxes and assessments based on any irrigation bond issue outstanding at the time of the passage of section 356 through 390, against the property assessed from and after the first Monday of April of any year, and such lien shall not be removed until the assessments are paid or the property sold for the payment thereof, and any lots, pieces or parcels of real estate within the boundaries of such city irrigation system owned by a city or county and not used purely for governmental purposes shall be subject to such assessment.

Sections 356 through 390 of the bill were substantially the same as the sections contained in the municipal irrigation system act of 1939. In section 368 of the recodification in 1967, the words "of section 356 through 390" were substituted for "of this Act" that appeared in section 7 of the municipal irrigation system act of 1939.

In light of this statutory history, we conclude that when the legislature used "this act" in reenacting what is now I.C. § 50–1813 in 1967, it intended to refer to sections 356 through 390 of the 1967 recodification, not the entire municipal code contained in that bill. Only if the legislature had clearly demonstrated that it intended to create a new lien applying to all assessments levied under any part of the municipal code could we conclude otherwise. We find no evidence of this intention. Therefore, we reject the contention that the city could impose a lien on the property based on the delinquent charges for water, sewer and garbage services furnished to the tenants.

## III.

### THE CITY DID NOT HAVE IMPLIED POWER TO COLLECT FROM THE OWNER FOR CHARGES INCURRED BY THE TENANTS.

The district court also ruled that the power of the city to collect from the owner was necessarily implied from the powers granted to the city in I.C. §§ 50–323 and 50–1030(f). We disagree.

■ This Court has repeatedly held that municipalities may exercise only those powers granted to them or necessarily implied from the powers granted. *E.g., Caesar v. State,* 101 Idaho 158, 160, 610 P.2d 517 (1980); *Hendricks v. City of Nampa,* 93 Idaho 95, 98, 456 P.2d 262. If there is a fair, reasonable, substantial doubt as to the existence of a power, the doubt must be resolved against the city. *O'Bryant v. City of Idaho Falls,* 78 Idaho 313, 320, 303 P.2d 672 (1956); *Oregon Short Line Railroad Co. v. Village of Chubbuck,* 83 Idaho 62, 65, 357 P.2d 1101 (1960). This is especially true where the city is exercising proprietary functions instead of governmental functions. The operation of a water system, a sewer system and a garbage collection service by the city is a proprietary function, not a governmental function. *Schmidt v. Village of Kimberly,* 74 Idaho 48, 60, 256 P.2d 515 (1953).

■ Here, the district judge relied on provisions of the statutes that granted to the city the power "to establish, create, develop, maintain and operate domestic water systems" (I.C. § 50–323) and "[t]o prescribe and collect rates, fees, tolls, or charges ... for the services, facilities and commodities furnished by [water systems and sewerage systems], ... and to provide methods of collections and penalties, including denial of service for nonpayment of such rates, fees, tolls or charges" (I.C. § 50–1030(f)). From these statutes the district judge implied the power for the city to collect the delinquent charges in this case from the owner. We also note that I.C. § 50–344 grants cities "the power to maintain and operate solid waste collection systems."

We acknowledge that the city may collect the charges for the water, sewer and garbage services provided by the city from those who use the services. This right to collect does not depend on any expressed or implied power of the city, but rather on principles of contract law that obligate one

who accepts a service to pay for it. What the city has attempted to do here is to rewrite those principles to allow collection from the owner, even though the services were not ordered, contracted for, or used by the owner.

Almost eighty years ago this Court decided a case involving a water company operating a water system under a franchise granted by the City of Coeur d'Alene. There, the Court said:

> [A] water company can make and enforce such reasonable rules and regulations as are in harmony with law and justice, for the conduct of its business and the collection of its water rentals.

*Hatch v. Consumers Co., Ltd.,* 17 Idaho 204, 215, 104 P. 670 (1909).

This same rule is applicable to a city operating its own proprietary services. The rules and regulations must be reasonable. In *Schmidt v. Village of Kimberly,* 74 Idaho 48, 256 P.2d 515 (1953), this Court cited *Hatch* in upholding as reasonable the provisions of an ordinance that service would be discontinued to any user who failed to pay water and sewer charges. There, the sanctions for failure to pay were imposed on the user. An implied power to collect from an owner who had not ordered, contracted for, or used the service would be unreasonable because it would create a liability not consistent with principles of contract law. We are not prepared to read this power into these statutes.

## IV.

### CONCLUSION.

The judgment is reversed, and the case is remanded to the magistrate division for dismissal of the action.

Costs to the appellant.

BAKES, C.J., concurs.

SHEPARD, J., sat, but did not participate in the opinion due to his untimely death.

BISTLINE, Justice, separately concurring in the Court's judgment.

Justice Huntley has suggested that this case should be decided on a straightforward and simple analysis, rather than attempting to track through the history of certain sections of the Idaho law which do not really control the resolution of this controversy. I tend to agree with him in that respect. However, and perhaps approaching the case even more simplisticly than Justice Huntley, I reach a different result.

Basically the issue is whether a landlord can be held responsible for a debt which is incurred by some other person. Stipulated fact No. 3 provides that: "Each tenant opened up his own water, sewer, and sanitation account, individually and in his own name with the City of Grangeville. Billings for the services were made by the City of Grangeville in the names of the respective tenants." The key word is *account.* "Account" is a word so much used in business parlance that it is not in need of definition. While most mundane business affairs are now purchases of goods and/or services in exchange for cash or credit card, formerly most ordinary transactions were on open account—open account at the local grocery store, at the hardware store, at the service station, etc. At the end of the month customarily there was a billing and a payment—perhaps not always in full, and the account carried over. *Black's Law Dictionary* defines "open account": "An account which has not been finally settled or closed, but is still running or open to future adjustment or liquidation." *Black's* also defines current account: "An open or running account or unsettled account *between two parties.*" An "account payable" is also defined: "Contract obligations owing by a person on open account." Idaho law since during Territorial days has recognized the prevalence of open running accounts: "In an action brought to recover a balance due upon a mutual, open and current account ... the cause of action is deemed to have accrued from the time of the last item proved...." I.C. § 5–222.

Judge Reinhardt correctly stated the issue presented, whether or not the City of Grangeville could impose *personal* liability on Haskin for delinquent water, sewer, and garbage bills accumulated by his tenants when they opened up the accounts individually and in their own names where there was no written agreement between Grangeville and Haskin which so provided.

When I was last practicing law the answer resolving this controversy was the requirement that a promise to answer for the debt of another had to be in writing. I.C. § 9–505(2). In scanning through the Rules of Evidence which four members of this Court promulgated, I do not see that I.C. 5–905 was abrogated or replaced.

Section 3–3–6 of the Grangeville Municipal Code does indeed state, as Judge Reinhardt has pointed out, that a property owner is jointly and severally liable with his tenant for the tenants' unpaid bills on the open account which the *tenant* opened. The City of Grangeville cannot confer upon itself the power to hold Haskin accountable for his tenants' unpaid open accounts. Nor does I.C. 50–1813, a statute designating *assessments* as liens on real property, confer any such power on the city. Open accounts are not assessments. The legislature has not ever pretended that assessments are synonymous with open accounts.

It is a very serious matter to declare that a person may be held liable for some other person's default in paying his monthly bills, and it simply would be unlawful, and likely an unconstitutional deprivation of property, unless, that is, the landlord (or anyone else, for that matter, who is a willing guarantor) has agreed in writing to be responsible.

Obviously, as I understand it is done elsewhere, Grangeville might refuse to open an account for a tenant unless a substantial deposit is advanced for security or some acceptable person guarantees payment in writing. Here the required deposit was $25.00.

In the instant case it is noted from stipulated fact No. 7 that the ordinance seeks some landlord involvement by providing that, for the cost of duplicate billing, the landlord may obtain copies of the billing being sent to the tenant who has opened the account. This is certainly no way to run a railroad. If the City somehow (likely because of its own ordinance) felt that the landlord was really liable for the monthly billings, it behooved the City to send him the monthly billings. Before the City could attempt to hold the landlord responsible for the debt of another, it would seem that the City would have had the courtesy to so notify him. It does not appear from the record that this happened.

Common sense would seem to dictate that the City, apparently wanting to protect itself from the losses of itinerant tenants who might leave town without paying their accounts, in the first place would require more substantial security deposits or, alternatively, written guarantees before opening new accounts with new customers. Such should be much preferred to passing through *three levels of court* only to find out that Mr. Haskin cannot be held accountable for the magnificent sum of $73.51 which his two tenants owed and failed to pay.

HUNTLEY, Justice, dissenting.

I respectfully dissent from the majority opinion. I do so because it appears to me to ignore what should be a rather straight forward and simple analysis of this case by attempting to track through the history of certain Idaho code sections which do not really control the outcome or address the issue in this case.

Neither party, nor any member of this Court, questions the fact that under the statutes of the state of Idaho a city or other municipal corporation has the power to establish a garbage system. Such systems are usually operated as part of the sewer and water system and are operated as part of the total sanitation system, which sanitation is directly related to the power of the state and its municipalities to provide for the public health and welfare.

Inherent in the power to operate such a system is the power to collect reasonable fees to operate the system.

The City of Grangeville adopted its Ordinance No. 507 under date of July 10, 1978, part of which has been codified as Section 3-3-6 of the City of Grangeville Municipal Code. That ordinance and code provides in pertinent part:

... Notwithstanding the fact that the customer might be a tenant and receive the water, sewer or garbage bill, the owner and occupant of any premises using the water, sewer or garbage system, shall be jointly and severally liable for all fees and charges assessed by the City. Any owner of real property renting the same to others, who shall desire to have notification of the monthly charges, shall make written application to the City Clerk for such duplicate billing, and shall be charged, in addition to the water, sewer and garbage services, the actual costs of such duplicate billing.

No party, indeed not even this Court, has held that Ordinance 507 is unconstitutional and it is certainly not beyond the powers of a city to enact. The ordinance is straightforward, gives notice to both the owner and the tenant, and such ordinances have been sustained throughout the United States. The case is that simple, and this Court need not get lost in the attempt to analyze it on the basis of the statutory history, which history has nothing to do with whether or not a municipality has the basic power, under Idaho law, to enact an ordinance such as Grangeville Ordinance No. 507.

Accordingly, I would affirm both the decision of the magistrate court and the appellate decision of the district judge.