95 P.3d 53

**BIG SKY PARAMEDICS, LLC, an Idaho Limited Liability Company, Plaintiff–Appellant,**

v.

**SAGLE FIRE DISTRICT, a governmental subdivision of the State of Idaho and a body politic, Defendant–Respondent.**

No. 28940.

Supreme Court of Idaho.
Boise, April 2004 Term.

July 7, 2004.

Finney, Finney & Finney, Sandpoint, for appellant. John A. Finney argued.

William L. Herrington, Moscow, for respondent.

SCHROEDER, Justice.

Big Sky Paramedics, LLC (Big Sky) sought a permanent injunction to enjoin Sagle Fire District (Sagle) from operating an ambulance service. The district court denied the request. Big Sky asks the Supreme Court to reverse the district court's decision and remand the matter back to the district court for further proceedings consistent with the issuance of a permanent injunction.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Sagle Fire District has operated an ambulance service within its district at the Basic Life Support level since 1997. In February 2000 Sagle upgraded to Intermediate Life Support level and in August 2000 applied for Advanced Life Support level. According to the district court, it is the application for the Advanced Life Support level that apparently caused Big Sky to initiate this lawsuit.

Sagle is a governmental subdivision of the State of Idaho. Unless other services are unavailable (or in response to a mutual aid request), Sagle dispatches ambulances only to incidents of emergencies within the boundaries of the district. Prior to Sagle establishing ambulance service, a private company dispatched from Sagle's facilities. Sagle became licensed only after that company stopped doing business and Sagle's board determined that adequate ambulance service was not available to its residents.

Big Sky filed its complaint on December 5, 2001, seeking declaratory judgment and injunctive relief against Sagle. Sagle answered, and a hearing was held in which evidence was presented on the issue of a preliminary injunction. The district court denied Big Sky a preliminary injunction on the basis that preliminary harm had not been shown. Following trial, the district court

held that Sagle may operate an ambulance service within the jurisdictional boundaries of the fire district and wherever else Sagle has mutual protection agreements. The district court held that whichever agency loads the injured person into its ambulance will transport the injured person, and that if Sagle stabilizes an injured person, but has not loaded that person into Sagle's ambulance before the arrival of Big Sky, that Big Sky shall be the entity to transport the person. The district court denied Big Sky's motion for reconsideration. Big Sky appeals.

## II.

### SAGLE FIRE DISTRICT MAY OPERATE THE AMUBLANCE SERVICE

#### A. Standard of Review

■ The principal issue on appeal is whether a fire district created pursuant to Idaho Code has the power and authority to operate an ambulance service. The standard of review of the lower court's determination on issues of statutory interpretation is one of free review. *State v. Nelson,* 119 Idaho 444, 446, 807 P.2d 1282, 1284 (Ct.App.1991).

#### B. Purpose and Power of Fire Districts under I.C. § 31–1401

I.C. § 31–1401 provides the following:

The protection of property against fire and the preservation of life, are hereby declared to be a public benefit, use and purpose. Any portion of a county not included in any other fire protection district may be organized into a fire protection district under the provisions of this chapter. All taxable property within any fire protection district created under the provisions of this chapter is and shall be benefited ratably in proportion to assessed valuation by the creation and maintenance of such district, and all taxable property within any such district shall be assessed equally in proportion to its assessed valuation for the purpose of and in accordance with the provisions of this chapter. This chapter shall be known as the "Fire Protection District Law," and whenever cited, enumerated, referred to or amended, may be designated

as the "Fire Protection District Law," adding when necessary the code section number.

I.C. § 31–1401 grants fire districts power for "The protection of property against fire and the preservation of life . . ." Beyond this, no express powers are given.

Big Sky argues that Sagle does not have the right to operate an ambulance service. Sagle responds that the authority to operate ambulance service may be implied under the language of the statute. According to Big Sky "the preservation of life" provision in the statute encompasses the preservation of life from fire but does not extend to a general grant of power. Sagle asserts that implicit in this language is the right to operate the ambulance service to preserve life beyond the hazards created by fire. The district court made the following determination:

This Court agrees with Sagle's argument, that since these statutes set forth no specific operational powers at all, not even the specific power to fight a fire, the legislature must have meant them to have broad powers in determining what operations the fire protective district will use the effect "preservation of life."

■ Municipal power is a classic example of derivative power. Because a fire district is a governmental subdivision like a city, a fire district possesses only the powers conferred on it by the legislature or which can be derived by necessary implication. *State v. Frederic,* 28 Idaho 709, 715, 155 P. 977, 983 (1916). This Court has articulated this rule as a strict limitation when construing municipal powers: "municipalities may exercise only those powers granted to them or *necessarily implied from the powers granted* . . . [and i]f there is a fair, reasonable, substantial doubt as to the existence of a power, the doubt must be resolved against the city." *City of Grangeville,* 116 Idaho 535, 538, 777 P.2d 1208, 1211.

#### C. Necessarily Implied Powers

■ The question is whether the authority to operate an ambulance service is implied in I.C. § 31–1401. The statute does state that a fire district has the power to conduct activi-

ties relating to the "preservation of life." Regarding municipalities, "if the authority ... is not express but derives from necessary implication, it is not enough that the implied power is 'convenient' to [express powers], but it must be indispensable to them." MCQUILLIN, MUNICIPAL CORPORATIONS § 34.23 (3d. ed.1995). Although Sagle is not a municipality, this approach is applicable. Thus, resolution of the issue turns on how indispensable the operation of an ambulance service is to a fire district.

The district court found that Sagle has operated an ambulance service within its district at the Basic Life Support level since 1997. Sagle upgraded to Intermediate Life Support level in February 2000. Subsequently, Sagle applied for Advanced Life Support Level and received that approval from the State of Idaho Department of Health and Welfare on December 17, 2001. The district court further found:

> There is uncontradicted evidence, that especially as to calls originating from south of the Sagle fire station, Big Sky will almost always take longer to respond. This is because Big Sky responds from Sandpoint (unless a unit is out on the road roaming around when a call comes in) and Sagle responds from Sagle (unless its unit is out on the road when a call comes in). Whether Sagle can respond two minutes faster on average or five minutes faster on average is of no real significance to the Court. What is significant is that Sagle can respond faster. These are matters of life and death, matter of life protection and life preservation. The uncontradicted evidence is that Sagle is faster to these areas, and if they are faster, they are providing a service that is not "reasonably" available under Idaho Code § 31-3901.

The district court found it uncontradicted that Sagle provides faster ambulance service than Big Sky to the residents of the district. Sagle maintains that it began ambulance service not to compete with private services, but rather to protect the lives of patrons within the district. The Court is satisfied that the "preservation of life" provision in I.C. § 31-1401 extends beyond the preservation of life

from fire. The right to operate the ambulance service for the preservation of lives of its residents is encompassed within the Fire District's power set forth in I.C. 31-1401.

### III.

### CONCLUSION

The decision of the district court is affirmed. Sagle is awarded costs.

Justice KIDWELL concurs.

Justice EISMANN, Concurring.

I concur in the majority opinion and write only to discuss further the legislative intent behind Idaho Code § 31-1401. When that statute was originally enacted in 1943, it provided, "The protection of property against fire is hereby declared to be a public benefit, use and purpose." Ch. 161, § 1, 1943 Idaho Sess. Laws 324. In 1974, the legislature amended the statute to add the words "and the preservation of life," so that it read, "The protection of property against fire and the preservation of life are hereby declared to be a public benefit, use and purpose." Ch. 77, § 1, 1974 Idaho Sess. Laws 1164, 1165. The wording of the statute does not link "preservation of life" to fires. It does not limit the purpose of a fire protection district to the preservation of life against fire, as it does to the protection of property. Even assuming there is some ambiguity in this regard, the title to the enactment stated that the statute was being amended "by adding the preservation of life as one of the purposes of the law." Id. at 1164. Again, there is nothing linking the preservation of life to fire. The legislature granted fire protection districts the power to conduct activities relating to the preservation of life, and the operation of an ambulance service comes within that power.

The dissent argues that statements made during committee hearings by proponents of the 1974 amendment should restrict the scope of the language of the statute. Statements made by persons supporting legislation cannot modify the plain language of the legislation. Their expressed reasons for supporting the legislation are irrelevant when interpreting the wording used in the legisla-

tion. The proponents who attended the committee hearings were not the only ones entitled to vote on the bill. Their comments cannot limit the reasons why either they or others voted in favor of the amendment, particularly those who were not present at the committee meetings. In addition, it is not unusual for the language of a statute to be broader than is necessary to address the primary issue that motivated a proponent of the legislation. If comments by legislators can modify the language of the statute, is it comments by proponents or opponents that can do so? The proponents of legislation sometimes minimize the scope of its impact, while the opponents sometimes exaggerate it. If the legislature had intended to restrict the 1974 amendment to rendering "first aid at the scene" or emergency medical care, it certainly could have chosen that wording. If the language chosen by the legislature is too broad, it has the power and authority to narrow the scope of the statute.

Justice BURDICK, Dissents.

I respectfully dissent because the Court departs from the Legislature's original intent in this case and expands fire districts powers beyond that granted to them by the Legislature.

The Court's primary duty in interpreting a statute is to give effect to the legislative intent and purpose of the statute. *Adamson v. Blanchard,* 133 Idaho 602, 605, 990 P.2d 1213, 1216 (1999); *Bannock County v. City of Pocatello,* 110 Idaho 292, 294, 715 P.2d 962, 964 (1986). Additionally, the legislature's intent is ascertained from the statutory language and the Court may seek edification from the statute's legislative history and historical content at enactment. *Adamson,* 133 Idaho at 605, 990 P.2d at 1216. As in *Adamson,* the parties present two competing interpretations of "preservation of life."

The "preservation of life" language was added to I.C. § 31–1401 in 1974. Discussions about the amendment took place in the Senate Health, Education, and Welfare (H.E.W.) Committee on January 31, 1974, and February 14, 1974 and in the House Local Government Committee on March 8, 1974.

During the first discussions, Senator Barker explained:

> that the present law governing Fire Protection Districts gives no authority to men trained in life saving techniques to use those techniques. In fact, the Attorney General's office says that they cannot administer aid in the form of lifesaving techniques to anyone under present law. This bill would add a provision to present law for the protection and preservation of life.

H.E.W. Committee, Minutes, January 31, 1974.

The Local Government Committee heard the following:

> *Fire Chief Peterson* spoke in favor of this bill and answered the question, "why the emergency clause" because they cannot render first aid legally, at this time.
>
> *Mr. Anderson* urged passage of this bill also, to make it legal to administer first aid.
>
> *Fire Chief Lane* said it is impossible to curtail this type of activity which has been going on since the formation of fire departments. He hoped the legislature would "come to their aid" on this.

The legislative intent seems clear—first aid at the scene, nothing more.

This is consistent with the overall legislative scheme. During the H.E.W. Committee meeting of January 14, 1974, Senator Snow asked if this would apply to cities and Senator Barker answered it wouldn't because city fire departments have their own regulations.

This bill was aimed at rural county fire districts only. Counties are allowed to pass an ambulance district pursuant to Idaho Code Chapter 39, Title 31. Why would the legislature duplicate efforts with this very nebulous phrase? The district court should be reversed with instructions to limit the fire protection district to "first aid" at the site of their fire suppressing efforts. Ambulance services should be left to ambulance districts or nonprofit and for profit private ambulance organizations.

Chief Justice TROUT concurs.