132 P.3d 416

**SONS AND DAUGHTERS OF IDAHO, INC., a non-profit corporation, Plaintiff–Appellant,**

**v.**

**The IDAHO LOTTERY COMMISSION, Defendant–Respondent.**

No. 31609.

Supreme Court of Idaho, Boise, February 2006 Term.

March 20, 2006.

Lynn E. Thomas and Iver J. Longteig, Boise, Idaho, for appellant. Lynn E. Thomas argued.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, Idaho, for respondent. Michael S. Gilmore argued.

JONES, Justice.

## I.

This case arises from 2001 amendments to the Gaming Rules (IDAPA 52.01.02) for bingo which, among other things, required bingo operators to track all bingo paper used by them. In 2003, Sons and Daughters of Idaho, Inc. (S & D) sought a declaratory judgment that an amendment to the tracking provision was not enacted in substantial compliance with the Administrative Procedure Act. The district court denied this claim. We affirm.

## II.

On February 28, 2003 S & D filed a complaint for a declaratory judgment against the Idaho State Lottery Commission (the Lottery). The Lottery is responsible for the regulation of bingo games in Idaho. At the time of this action, S & D was licensed to conduct bingo games.

In 2000, the Lottery began the process of amending the Gaming Rules for bingo and raffles, including the addition of a sentence to IDAPA 52.01.02.106.01 (Rule 106.01). Rule 106.01 required bingo operators to keep track of all "bingo sales per session by using sequentially numbered/colored bingo paper." The amendment, which is being litigated in this action, added language requiring each operator to "keep a ledger of the numbers of all such papers used." Rule 106.01 does not provide guidance as to the format of the ledger.

The district court described the facts surrounding the process of amending and adopting the change to Rule 106.01 as followed:

On June 19, 2000, the Bingo–Raffle Advisory Board ( [Advisory Board] ) held a public meeting and discussed the proposed rule changes. The [Advisory Board] forwarded the proposed changes to [the Lottery]. On July 17, 2000, [the Lottery] held a teleconference meeting to review proposed rule changes to the Gaming Rules for bingo and raffles, found at IDAPA 52.01.02.001, et seq. The rule changes were prompted by legislative action and a desire to tighten regulation of charitable gaming. After reviewing and discussing the changes, [the Lottery] voted to approve the rule changes.

[The Lottery's] Director Bob Ginkel submitted the proposed changes to the Ad-

ministrative Rules Coordinator ... The October Idaho Administrative Bulletin, published on October 4, 2000, included [the Lottery's] Notice of Proposed Rule and gave notice that a public hearing would be held on the rulemaking on October 10, 2000. The notice gave the time and place of the hearing. It also stated that written comments regarding the changes could be submitted on or before October 25, 2000. Finally, the notice contained the full text of all the proposed rule changes, including the amendment to Rule [106.01].

Notice of the proposed rulemaking was published in forty-two newspapers throughout Idaho, including the Idaho Statesman. This notice stated that the rules related to 'bingo raffle games,' included the October 25, 2000, deadline for written comment and provided notice that [the Lottery] had scheduled a public hearing on the proposed rules. The notice further directed all interested parties to the October 4, 2000[ ] Idaho Administrative Bulletin for public hearing schedules and text of the proposed changes.

At the October 10, 2000 public hearing, the [Advisory Board] received public comment regarding the proposed rules. The specific change to Rule [106.01] was not discussed at that meeting. Only limited written comments were ever received regarding the proposed changes.

On November 21, 2000 [the Lottery] accepted and approved the proposed changes and recommended that the rules be presented to the legislature. On January 3, 2001, the Idaho Administrative Bulletin published notice that [the Lottery] had adopted the proposed rules as a pending rules, subject to review by the 2001 Legislature. While both the Senate State Affairs Committee and the House State Affairs Committee publicly considered the proposed rules, the Legislature took no action to either rescind or amend them. Accordingly, absent a declaration and order from this Court to the contrary, the rule change then went into and are still in effect.

While the individual documents that ultimately formed the rulemaking record for the 2000–01 rule changes at issue were evidently maintained in [the Lottery's] files, [the Lottery] apparently did not compile a single, publicly accessible file as a rulemaking record until after this litigation was initiated.

(footnotes omitted).

After adoption of the rules, the Lottery sent an informational packet, the Important Gaming Update (Gaming Update), to all licensed gaming organizations in Idaho, including S & D. The Gaming Update was sent to assist the organizations to comply with the statutes and rules. The Gaming Update was not promulgated as a rule and the Lottery did not assert that it was an enforceable rule.

On October 17, 2002, the Lottery sent S & D a letter admonishing S & D to immediately comply with the paper tracking requirements in Rule 106.01. This letter was accompanied by the Attorney General's response to S & D's request for an opinion on the paper tracking requirements. Based upon the Lottery's letter, it appears that a representative from S & D contacted the Lottery on two occasions regarding the Gaming Update and the paper tracking requirements. On October 31, 2002, S & D sent a letter to the Lottery stating that it had been in compliance with the law, it found the paper tracking requirements confusing, and it would seek a declaratory judgment regarding such requirements.

S & D then filed for a declaratory ruling that Rule 106.01 was void. At trial the Lottery moved to dismiss after S & D concluded its case-in-chief. The district court denied the Lottery's motion. Then, after both parties rested, the district court denied S & D's claims regarding Rule 106.01. This appeal followed.

### III.

■ The Supreme Court exercises free review over issues of statutory interpretation. *Big Sky Paramedics, LLC v. Sagle Fire Dist.*, 140 Idaho 435, 436, 95 P.3d 53, 54 (2004). However, the Court must defer to the district court's findings of fact which are supported by substantial and competent evi-

dence. *Rowan v. Riley*, 139 Idaho 49, 54, 72 P.3d 889, 893 (2003).

### IV.

■■■ S & D argues that Rule 106.01 is void because the Lottery failed to provide sufficient notice prior to enacting the rule and because the Lottery failed to maintain an adequate rulemaking record. These issues are moot. "An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005). Thus, if "the issues are no longer live or the parties do not have a legally cognizable interest in the outcome," the issues are moot. *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991) (citations omitted). The issues of sufficient notice and failure to maintain an adequate rulemaking record are no longer live because the substance of Rule 106.01 and the specific language at issue here were subsequently enacted into law by the Legislature. *See* I.C. § 67–7709(3). Further, S & D does not have a legally cognizable interest in the outcome of these issues because it failed to present evidence of any adverse consequences that it endured as a result of the rulemaking proceeding. Consequently, these issues are moot.

### V.

■■■ S & D next argues that Rule 106.01 is unconstitutionally vague. This contention also fails. A statute is void for vagueness where it "either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning." *Haw v. Idaho St. Bd. Of Med.*, 140 Idaho 152, 157, 90 P.3d 902, 907 (2004). However, a civil statute will not be held void for vagueness "if it can be given any practical interpretation" or if persons of common intelligence "can derive core meaning from it." *MDS Inv., L.L.C. v. State*, 138 Idaho 456, 461, 65 P.3d 197, 202 (2003); *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 716, 791 P.2d 1285, 1295 (1990). S & D argues that the paper tracking requirement in Rule 106.01 is susceptible to multiple interpretations and is, therefore, unconstitutionally vague. However, as the district court stated, the issue is not whether S & D understood Rule 106.01; instead, the issue is whether people of reasonable intelligence must guess at its meaning or whether these individuals can derive a core meaning.

■■ Rule 106.01 states "All licensed organizations operating bingo sessions ... must track their bingo sales per session by using sequentially numbered/colored bingo paper. Each such organization shall keep a ledger of the numbers of all such papers used." S & D argues that Rule 106.01 is vague because the latter sentence can be interpreted as requiring either a ledger that records each individual piece of paper sold in each session or a ledger that records the packages of serially-numbered papers sold. However, as the district court found, the evidence shows that persons of common intelligence did not have to guess at its meaning. S & D's very argument shows that it did not misunderstand the meaning of Rule 106.01 and that Rule 106.01 is not vague. As expressed by S & D, Rule 106.01 requires the bingo operators to use a ledger in order to keep track of all bingo papers used during each bingo session. The question as to whether the bingo operators must list each bingo paper individually, or group them by package on the ledger, appears to be left for the bingo operators to decide. S & D has provided no evidence or legal authority supporting a proposition that allowing the bingo operators this choice would cause Rule 106.01 to be unconstitutionally vague.

The above interpretation of Rule 106.01 is confirmed in the Gaming Update. While the Gaming Update is not legally enforceable, it does provide guidance in the interpretation of the Gaming Rules. In the Gaming Update, the Lottery explained that the bingo operators could either use the "nightly log" provided as an attachment to the Gaming Update, which grouped bingo paper based upon its sequential number and/or coloring, or the operators could devise their own ledger, so long as the ledger contained a list of the number and types of bingo paper used in each session.

Additionally, Rule 106.01 is better understood when read as a whole with the other provisions of Rule 106. Rule 106.02 states that "tracking will vary according to games sold at each session (packets, specials, singles, six (6) ons, three (3) ons, etc.)" and that the bingo operators may designate the bingo paper according to the "game name or [the] color of paper." IDAPA 52.01.02.106.02. Further, Rule 106.03 states that "[i]ndividual games or packets sold must be recorded sequentially for effective tracking." IDAPA 52.01.02.106.03. When considering these rules, a practical interpretation of Rule 106.01 is that bingo operators can track and group the bingo papers used per session according to their appropriate designation.

## VI.

■ S & D argues that the Gaming Update was an invalidly enacted rule because it broadened the Gaming Rules by incorporating requirements that were not contained within the rules, specifically by requiring bingo operators to keep track of the prices charged for the bingo papers. This contention is not well founded.

Idaho Code § 67–5231 voids any rule that was not "adopted in substantial compliance" with Chapter 52 of the Idaho Code. The Idaho Code has defined a "rule" as "an agency statement of general applicability . . . that implements, interprets, or prescribes . . . law or policy; or the procedure or practice requirements of an agency." I.C. § 67–5201(19). However, the definition of "rule" contains numerous exceptions, including "written statements given by an agency which pertain to an interpretation of a rule." I.C. § 67–5201(19)(b)(iv). The Gaming Update is better classified as a written statement interpreting agency rules rather than as a rule.

In previous cases, this Court has articulated the following factors in determining whether a document is a rule: a rule "(1) has wide coverage; (2) applies generally and uniformly; (3) operates only in future cases; (4) prescribes a legal standard or directive not otherwise provided by the enabling statute; (5) expresses agency policy not previously expressed; and (6) is an interpretation of law or general policy." *Asarco Inc. v. State,* 138 Idaho 719, 723, 69 P.3d 139, 143 (2003). It is uncontroverted that the Gaming Update has wide coverage, applies generally and uniformly, operates only in future cases, and interprets the law or general policy. However, the parties argue over whether factors (4) and (5) exist.

The Gaming Update does not "prescribe[ ] a legal standard or directive not otherwise provided by the enabling statute." At the time the Gaming Update was released, no Idaho Code provision explicitly contained a bingo paper tracking requirement. However, the Gaming Update, itself, does not impose such a duty. The Gaming Update, instead, informs bingo operators of this duty as imposed by Rule 106.01. Therefore, the Gaming Update does nothing more than explain a rule contained in the Idaho Administrative Code.

Additionally, the Gaming Update does not express an agency policy which was not previously expressed. S & D claims that the Gaming Update prescribes an additional agency policy by requiring bingo operators to keep track of the prices charged for the bingo papers. That is not the case. The Gaming Update contained a nightly log as an example of a form that could be used to keep track of the information required in the Gaming Rules. In the explanation of the nightly log, the Gaming Update stated that it was not necessary for the bingo operators to use the nightly log; however, they were required to keep track of all of the information specified in the nightly log. This information included, among other things, the numbers of papers sold, the sale price of the papers sold, and the total sales. S & D argues that bingo operators did not have to keep track of the sale price of the papers sold prior to the Gaming Update.

Prior to the Gaming Update, the Lottery required bingo operators to track the sales prices of bingo papers. Gaming Rule 122.02 required bingo operators to document the "accounting of revenues from sales of bingo cards." IDAPA 52.01.02.122.02. The provision certainly appears to require bingo operators to keep track of the sale prices of the

**664**

bingo paper sold. In fact, in order for the bingo operators to determine the revenues from such sales, they would need to keep track of the sale prices of the bingo papers, as well as the number of bingo papers sold. Therefore, the Gaming Update does not express a novel agency policy and is not a rule.

### VII.

■ Idaho Code § 67–7714 states that the Lottery "shall prescribe standardized forms for implementation of this act." S & D argues that the Lottery violated this statute by failing to prescribe a standardized form to correspond with Rule 106.01. This contention is misplaced. The Lottery Act (Chapter 77 of title 67) only requires the Lottery to prescribe forms for the information that must be filed with the Lottery. I.C. §§ 67–7709(2); 67–7710(4). However, the documents that were required by Rule 106.01 were not to be filed with the Lottery. I.C. § 67.7709(3); IDAPA 52.01.02.106.03. Instead, such documents were to remain in the bingo operator's permanent records. Thus, the Lottery was not required to prescribe a form for the Rule 106.01 paper tracking requirements.

### VIII.

We affirm the district court's order denying S & D's request to declare the paper tracking requirements in Rule 106.01 (now contained in I.C. § 67–7709(3)) void. Costs to the Lottery.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and BURDICK concur.