693 S.E.2d 24

**TRANQUIL PROPERTIES, INC., Appellant,**

**v.**

**DORCHESTER COUNTY a/k/a Dorchester County Public Works, Respondent.**

No. 4664.

Court of Appeals of South Carolina.

Heard Feb. 2, 2010.

Decided March 29, 2010.

Rehearing Denied May 28, 2010.

David G. Jennings and James A. Bruorton, IV, both of Charleston, for Appellant.

Andrew T. Shepherd and John G. Frampton, both of Summerville, for Respondent.

KONDUROS, J.

Tranquil Properties, LLC[1] (Tranquil Properties) appeals the master-in-equity's holding Dorchester County (the County) can bill it for sewer service charges incurred by tenants of the units in Tranquil Acres. We reverse.

## FACTS

Tranquil Acres is a planned development comprised of four main buildings arranged around a rectangular common area. Within the complex are forty single-unit homes individually deeded with Tranquil Properties being the record owner of thirty-nine units and the common area. The County provides sewer service to the units via four feeder lines, one for each building, connected to a main sewer tap located under a slab in the common area. Originally, the complex was serviced by a private septic tank system. It was later connected to the public sewer system.[2] While each unit is individually metered for water and other services, sewer service is to the entire complex.

David Scott Wiggins, principal member of Tranquil Properties, acquired the thirty-nine units in 2002. Tranquil Properties purchased Tranquil Acres' common area in 2004, and Wiggins transferred his ownership of the units to Tranquil Properties in 2006. All conveyances were made subject to easements, restrictions, and covenants of record.

In July 2007, the County billed Tranquil Properties directly for the sewer service provided to the entire complex. Prior to that time, each tenant was billed individually at a flat rate of $34.80 per month. Tranquil Properties refused to pay the bill unless the County provided a basis for directly billing it. The County notified Tranquil Properties it would terminate service to the complex if the bill was not paid. Eventually, Tranquil Properties brought a declaratory judgment action and injunction seeking to have the tenants directly billed for sewer

1.  The appellant in this matter is Tranquil Properties, LLC. However, the master-in-equity's final order denominates the entity as Tranquil Properties, Inc., and the appeal to this court was filed with that caption.

2.  Neither the record nor oral argument made clear whether Tranquil Acres' connection to public sewer service was mandated by the County.

service and to prevent termination of service. The County counterclaimed seeking the payment due.

The master-in-equity concluded the County could directly bill Tranquil Properties because the covenants existing at the time of transfer called for the creation of an association composed of unit owners that could assess fees "to promote the recreation, health, safety and welfare of the residents and for the improvement and maintenance of Common Areas." The master-in-equity found Tranquil Properties took the units and common area subject to this requirement thereby placing ultimate responsibility upon it to provide sewer service to the complex. This appeal followed.

## STANDARD OF REVIEW

■ A declaratory judgment action is reviewed based on the nature of the underlying issue. *Sloan v. Greenville County*, 356 S.C. 531, 544, 590 S.E.2d 338, 345 (Ct.App.2003). In this case the master-in-equity based his decision primarily on Tranquil Properties being successor to the responsibilities of the Association. That issue depends on an examination of the conveyances and covenants which lies in equity. *Hardy v. Aiken*, 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006). In that instance, the appellate court may find the facts on appeal in accordance with its own view of the preponderance of the evidence. *Id.*

## LAW/ANALYSIS

■ Tranquil Properties argues the master-in-equity erred in finding it was a successor to the Association and as such was responsible for providing sewer service to the property. We agree.

The covenants involved called for an association to be formed and for each unit owner to be a member. The association could then assess fees to each unit owner to promote the recreation, health, safety, and welfare of the residents and for the improvement and maintenance of the common area and homes on the property. The master-in-equity concluded Tranquil Properties was the successor to the association, defunct since 1997, stating: Tranquil Properties "took title to the common area from the original association,

subject to all the recorded covenants and conditions." The common area included the original septic tank that serviced all the buildings. Therefore, the master-in-equity concluded Tranquil Properties, as purchaser of the common area, was successor to the association and its responsibilities. Because sewer service promotes the health, safety, and welfare of tenants, the master-in-equity concluded the association would have been responsible for paying the sewer service bill and recouping that money through assessments.

■ Restrictive covenants are to be strictly construed and should be interpreted to promote the free use of property. *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006). The original covenants do not mention responsibility on the part of the association for sewer services. They seem more focused on the maintenance and access to any recreational facilities in the common area. The record reveals plans for a swimming pool in the common area that was never constructed. The covenants also give the association the right to dedicate any necessary portion of the common area to a public utility upon a two-thirds vote of the membership. However, to extrapolate from that a duty for the association, much less Tranquil Properties as successor, to pay for ongoing monthly sewer service is too great a leap. Obtaining the means for sewer service by securing a connection to the public system or providing the original septic tank is different than paying for the ongoing service in each unit each month. That service is utilized by the tenant and we can find no basis in the covenants to redirect that obligation.

Furthermore, the County had previously treated each tenant as a customer by billing them directly. The fact that such method was not effective does not by default shift the burden of collecting the payment to Tranquil Properties. *See City of Grangeville v. Haskin*, 116 Idaho 535, 777 P.2d 1208, 1211–12 (1989) (holding ordinances allowing lien against property for unpaid utility services did not render landlord liable for cost of service to tenants); *cf. Skyscraper Corp. v. County of Newberry*, 323 S.C. 412, 417–18, 475 S.E.2d 764, 765–67 (1996) (finding yearly use fee for solid waste removal assessed directly to landlord did not violate equal protection laws when such responsibility was spelled out in ordinance, landlord benefited

from the service and others similarly situated were treated the same).

In our view of the evidence, the County presented no basis for concluding Tranquil Properties is liable for the monthly sewer service charges of the tenants occupying Tranquil Acres. The ruling of the master-in-equity is therefore

**REVERSED.**[3]

HUFF and THOMAS, JJ., concur.

---

**3.** Because our determination of this issue is dispositive of the appeal, we need not address any remaining arguments by Tranquil Properties. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).